R. H. DALTON, Plaintiff in Error, *v.* ALBINA MURPHY, Defendant in Error.

1. CONFLICT OF LAWS.—As a general rule, a contract made in one place to be performed in another, must be made according to the laws of the latter ; hence if a *feme covert* owning slaves in this state, under the Act of 1846, execute in Alabama, according to the laws of that state, a deed of trust on them, to be performed in this state, by a sale of the slaves here, it is void, if not in conformity with the law of this state.

2. MARRIED WOMEN : CONTRACTS BY.—The Acts of 1839, and 1846, for the protection of the rights of married women, are enabling statutes : they confer the power on *femes covert* to make contracts, and such power must be exercised in strict conformity with the terms of the law, or the contract will be invalid.

In error from the Circuit Court of Monroe county.   Hon. W. L. Davis, judge.

The defendant in error, on the 10th day of January, A. D. 1855, instituted her action of *replevin* in the Circuit Court of Monroe county, against the plaintiff in error, for the recovery of certain slaves.   The defendant pleaded not guilty; and upon this issue there was a verdict and judgment for the defendant in error. Plaintiff in error moved for a new trial, which was overruled by the court.

From a bill of exceptions taken to the overruling of the motion for a new trial, it appears that on the 25th of March, 1848, Albina Murphy was married to one Macon Murphy, in the state of Alabama : that they remained in Alabama until December, 1849, when they removed to Aberdeen, in this state : that Matthew Hobson, the father of defendant in error, resided in the state of Alabama, until his death, which took place on the 10th of January, 1851.

That on the 22nd of December, 1852, distribution of his estate was had in Alabama, and the slaves in controversy, among others, were allotted to the defendant in error, as one of the distributees of his estate ; that soon thereafter the slaves were sent by one Wm. Tanner, to the defendant in error, who then resided in Aberdeen, Miss.

It also appeared, that on the 6th of May, 1854, at Bladen Springs, in the state of Alabama, said Macon Murphy and Albina Murphy his wife, executed a deed of trust, by which they conveyed the slaves in controversy to R. H. Dalton, as trustee, to secure the payment of a debt of $3000, due by said Macon Murphy, to one Walker.   By the provisions of said deed Dalton was authorized and required, upon default in the payment of the debt, to sell the negroes before the court house in the town of Aberdeen, for the purposes of the trust.   The deed recited that all the parties were of the county of Monroe, and the state of Mississippi; this deed was executed in the presence of and attested by two witnesses, in accordance with the laws of Alabama.   Macon Murphy soon after the execution of the deed, died at Bladen Springs.

There was some evidence offered on both sides, as to the domicil

of Macon Murphy, at the time of the execution of the deed, whether it was in Mississippi, or Alabama.   The opinion of the court renders it unnecessary that this evidence should be set forth. The slaves were in Aberdeen when the deed was executed.

W. F. *Dowd*, for plaintiff in error.

1. The deed was valid according to the laws of Alabama, where it was made : being valid there it is good everywhere, wherever might have been the domicil of the parties.   Personal property has no locality : it follows the person of the owner.   1 H. Black. 690; Story, Conflict of Laws, § 380; 4 Johnson, 34-39; *Greenwood* v. *Curtis*, 6 Mass. 358; *Sherrill* v. *Hopkins*, 1 Cowen, 107; *Milam* v. *Fitz James*, 1 Bos. & Pul. 139; *Thompson* v. *Ketchum*, 8 John. 192; *Andrews* v. *Pond*, 13 Peters, 65-78.

2. The capacity of a minor or married woman to contract is governed by the law of the domicil, *by the rules of the Civil Law ;* but by the common law, their capacity or power to make a contract is governed by the *lex loci contractus*.   Story, Confl. Law. §§ 85, 86, 89, 102, 103, 241; *Putnam* v. *Putnam*, 8 Pick. 433; *West Cambridge* v. *Lexington*, 1 Ib. 504; *Andrews* v. *His Creditors*, 11 La. R. 463; *Nail* v. *Roberts*, 3 Espn. R. 63.

3. If the civil law is to rule this case, the deed is valid, because by that, the law of the domicil of the wife at the time of her marriage determines her capacity to contract, and any subsequent change of domicil will neither increase, nor diminish her powers. Story, Con. Law, §§ 136, 137, 138, 139, and authorities there cited.

Mrs. Murphy's domicil at the time of her marriage was in Alabama.   They returned to Alabama, and made the deed according to the laws of that state.   See 2 Kent, 458.

4. The forms which appertain to a contract, and the solemnities attending its execution, which make it valid or void, are to be determined by the *lex loci contractus*.   Story, Confl. Law, §§ 318, 372; *Vidal* v. *Thompson*, 11 Martin, R. 23 ; *Lacon* v. *Higgins*, Eng. Com. L. R. 427.

5. That the property was to be sold in this state, does not make the validity of the contract determinable by our law.   The general principle adopted by civilized nations is, the validity and interpre-

tation of contracts is to be governed by the law of the place where they are made, but the remedies are to be governed by the *lex fori.* *Bank of U. S.* v. *Donelly*, 8 Peters, 370; Story, Confl. Law, 558; *O' Callaghan* v. *Shomond*, 3 Taunt. 82.

6. It is undoubted law, that the succession of personal property is governed exclusively by the law of the actual domicil of the intestate. Story, Confl. Law, § 481, and authorities there cited. Matthew Hobson, the father of Mrs. Hobson, died at his domicil, in Alabama; Mrs. M. being domiciled in Mississippi. By the law of Alabama, the property of Hobson descended to the sole and separate use of his married daughter. This was the law of the *succession* of his estate. I am aware of the rule which declares that where there is a change of the nuptial domicil, the acquisitions of property made after the change, are governed by the law of the actual domicil of the parties, at the time such acquisition was made; but this *rule* only extends to *acquisitions made in the new domicil,* and not to descents of property in the old domicil. It cannot be so extended without a violation of well recognized rules governing the law of descents. *Montgomery* v. *Agricultural Bank,* 10 S. & M. 566.

*D. C. Glenn,* on same side, argued the case orally.

*James T. Harrison,* for defendant in error.

The wife and husband signed the deed in the presence of each other, and there was no private and separate examination of the wife apart from her husband. She did not acknowledge the deed before any officer or legal functionary, and the subscribing witnesses show affirmatively, that the deed was signed in the presence of her husband. He and his wife signed at the same time.

The deed itself *estops* the parties trying to enforce it, from denying that this state was the place of domicil of the husband and wife. Another trust deed in favor of another creditor or surety, was also introduced as evidence on the trial, *by the plaintiff in error,* which proves the same fact. The testimony is clear, explicit, and full on the question of domicil, and the *jury have settled that matter;* and

see evidence of Mrs. Hobson, A. C. Hobson, Sydenham Moore, and Mrs. Inge.

Macon Murphy's domicil was certainly in Mississippi, before he went to Bladen Springs for his health, and it remained in the former place until he acquired a *new domicil.* Where was the new domicil? Story, Confl. Law, §§ 44, 45, &c., &c.; *Hairston et al.* v. *Hairston,* 27 Miss. R. 718, 719.

The locality of the contract for the loan of money was here; the property was here; the parties all resided and had their domicil here; all the parties looked to this place as the *situs* where the trust deed was to be executed; and the trust is now being attempted to be enforced here; upon what principle, then, can the laws of Alabama be invoked, if they would avail any thing?

"If, by the law of the place of the domicil of the husband, a married woman has capacity to make a contract, or to sue, or to ratify an act, her acts so done, will be valid everywhere; on the contrary, if she is deprived of such capacity by the law of the domicil of her husband, that incapacity exists in relation to all the like acts and contracts, even when done in a foreign country, or with reference to property in a foreign country. Story, Confl. Law, § 66; *Garnier* v. *Poydras,* 13 La. R. 177. "*Qualitas personam sicut umbra sequitur.*"

A minor or married woman, who is deemed incapable of transacting business (*sui juris,*) in the place of his or her domicil, will be deemed incapable everywhere, not only as to transactions in the place of his or her domicil, but as to transactions in every other place. Story, Confl. Law, § 65.

Under the laws of this state, the deed is void as to the wife, and does not bind her separate property. *Davis* v. *Foy,* 7 S. & M. 64; *Frost* v. *Doyle,* 7 Ib. 68; *Garrison* v. *Fisher,* 26 Miss. R. 352; *Robertson and wife* v. *Bruner,* 24 Ib. 242; and the *situs* of the property was in this state; the money that was attempted to be secured, was *lent in this state;* and the *place of performance* was in this state. The mere executing of a trust deed in Alabama upon property here, cannot prevent the operation of the rule, that the law here must govern. Story, Confl. Law, §§ 279, 287, 280, 299.

By our law the deed is void. Macon Murphy, in the character of husband, acquired no title to the slaves. He and his wife were living in Mississippi when Matthew Hobson died. Under the laws of either state, the property was the separate estate of the wife. Albina, at the time of the marriage, had no right or title to the property, and there was nothing for the matrimonial domicil to operate upon. *Lyon* v. *Knox et al.*, 26 Miss. R. 566, 567; *Kneeland* v. *Casley*, Meigs, R. 620; Story, Confl. Laws, §§ 186, 187, 188.

The judgment is right, upon the law and the testimony. It is correct in principle, and will not be disturbed. 27 Miss. R. 245; Ib. 425; Ib. 664.

*Sale* and *Phelan*, on same side, filed an elaborate written argument.

FISHER, J., delivered the opinion of the court.

This was an action brought by the defendant in error, in the Circuit Court of Monroe county, to recover certain slaves in the possession of the plaintiff in error.

The main facts are as follows: Macon Murphy and wife, the defendant in error, executed a deed of trust on the 6th of May, 1854, to the plaintiff, on certain slaves belonging to the wife, and held by her under the provisions of the act of 1846. The deed was executed at Bladen Springs, in the state of Alabama, in the presence of two witnesses, according to the laws of that state, but the slaves were at the time at the town of Aberdeen, county of Monroe, in which, according to the recital or statement of the deed, all the parties at the time resided. It also appears by the deed, that if default should be made in the payment of the debt therein secured, the trustee was authorized, upon giving certain notice, to sell the property at the town of Aberdeen. Murphy, the husband, a short time after the execution of the deed, died, and this action was brought by his widow, insisting that the deed, not having been executed according to the forms of the laws of this state, it is, as to her, void.

The single question presented by this statement of the case, is whether, admitting the deed to have been executed, so far as its

form and attestation are concerned, according to the laws of Alabama, but not according to the laws of this state, whether it is binding upon the plaintiff below, who was at the time of its execution a *feme covert*.

As a general rule, when a contract is to be performed at a particular place, it must be made according to the laws of that place, otherwise it will be inoperative, as the parties are presumed to contract with reference to such laws. The contract, as evidenced by this deed, was to be performed at the town of Aberdeen, in this state; and the question therefore is, when tested by our laws, was the deed binding upon the wife? The law is so well understood by the profession, as applicable to this class of cases, that it is unnecessary to state its requirements. The deed, when tested by the laws of this state, is absolutely void. But it is said, that it was made according to the requirements of the Alabama law, and if valid according to that law, it is equally so everywhere. If the subject-matter of the contract were there, and the place of performance in that state, there might be force in the position assumed by counsel. But it is manifest that the deed can have no other operation, that such as is given to it by our laws. A *feme covert*, can only contract with reference to her slaves held under the statute, in the mode which the statute itself has prescribed. It is not like a restraining statute, which takes away previous rights, but it is an enabling statute, removing certain disabilities, and giving the *feme covert* power to contract, by observing certain forms and ceremonies, without the observance of which the power does not exist. A particular mode having been prescribed by the statute, by which the contract is to be concluded, must be regarded as a negative upon all other modes for doing the same thing. The contract, to be binding upon the wife, must bear upon its face the evidence of her free and voluntary consent thereto. The law has prescribed the mode in which this consent shall be manifested. She must declare before the proper officer, that the deed is her free and voluntary act; and he must make his certificate of the fact before the deed, as to her, can be said to be complete. This is the mode in which the statute declares the contract shall be concluded; and to say that the statute should not

be followed, would be equivalent to saying that its provisions might be wholly disregarded. It is not a choice between a statutory and common law mode of proceeding, but it is either to follow the statute, or act without any rule of law at all on the subject.

We are therefore of opinion, that the court below committed no error, in refusing the instructions asked by the defendant below, as his evidence did not even create a presumption of title in him.

Judgment affirmed.