SIMMS v. HERVEY *et ux.*

</div>

| 19 | 273 |
| 94 | 511 |

| 19 | 273 |
| 138 | 55 |

1. Husband and wife: MORTGAGE. It is settled in this State, that by an instrument *duly executed* the wife may mortgage her separate property to secure her own or her husband's debt.

2. ——— CONVEYANCE: ACKNOWLEDGMENT. Prior to the taking effect of the Code of 1851, the acknowledgment of the wife was essential to a valid

Simms v. Hervey.

conveyance of her own property; but under the Code of 1851, and the act of March 8th, 1858 (Rev. 1860, § 2255), the conveyance of a married woman has.had the same effect as a conveyance by a *feme sole*, or by a man an acknowledgment being necessary to its admission to record as constructive notice to third persons, but not essential to its validity as between the parties.

—— *Westfall* v. *Lee*, 17 Iowa, 12; *McHenry* v. *Day*, 13 Id., 445, distinguished from this, in this, that they were on instruments of date prior to the act of March 8th, 1858.

3. Deed: EXECUTION AND DELIVERY. Under our statute, as at common law, a grantor, a grantee, and a thing to be granted, must all be described in a deed; and an instrument in which any of these are omitted is not legally executed and can convey no title.

—— Where the wife signed with her husband a blank mortgage, which was delivered to the husband who inserted therein a description of real estate owned by the wife, and then delivered the paper to a third party with instructions to negotiate it, and insert the name of the mortgagee when negotiated, it was held, that the instrument was not the deed of the wife.

4. —— PAROL AUTHORITY TO FILL BLANK. The power to fill a blank in a conveyance of land otherwise duly executed, under a parol authority, not being presented as a question the decision of which is essential to a decision in this case, it is not conclusively denied; but DILLON, J., is of opinion that it is the simpler, better and safer doctrine to deny even this power, and the validity, as between the parties to a conveyance thus executed, unless it has been subsequently redelivered, or at least confirmed, ratified, or adopted by the grantor.

—— This case is entirely different from *McHenry* v. *Day*, 13 Iowa, 445; and *Baldwin* v. *Snowden*, 11 Ohio, 203.

## *Appeal from Polk District Court.*

### MONDAY, OCTOBER 16.

FORECLOSURE OF MORTGAGE: REQUISITES OF VALID CONVEYANCES BY MARRIED WOMEN: INSTRUMENTS AND DEED EXECUTED IN BLANK. — The plaintiff brings this action against the defendants, who are husband and wife, to foreclose a mortgage purporting to be executed by them, in substance as follows:

" We, Wm. H. Hervey and Linda R., of Polk county, Iowa, in consideration of $1,800 in hand paid by Francis Simms, of Troy, N. Y., do hereby sell and convey unto the said Simms, lot 8, in block 'A,' &c., in Des Moines, Iowa, together with all buildings thereon. And the said Linda R. Hervey hereby relinquishes her right of dower in and to the same. To be void on condition that the said Wm. H. Hervey shall pay his promissory note to the order of Adam R. Smith for $1,800, with interest, &c. In witness whereof, we have hereunto set our hands and seals this 24th day of September, 1857.

<div style="text-align:right">

(Signed)          " WM. H. HERVEY,<br>
"LINDA HERVEY."

</div>

A certificate of acknowledgment, in due form, is annexed, of the same date, signed by Joseph B. Stewart, a notary public of Polk county. This mortgage was filed for record October 3d, 1857. The note secured by this mortgage was introduced on the trial. It bears date September 24, 1857, and is payable to the order, not of the plaintiff, but of Adam R. Smith, is for the sum of $1,800, and signed by Wm. H. Hervey alone.

The answers deny the execution and delivery of the mortgage to the plaintiff, or to any other person. Mrs. Hervey, in various amended answers, sets up that the lot described in the mortgage was her separate property, and became so prior to her marriage with her husband; that her signature to the mortgage, which she signed in blank, was procured by the fraud of the plaintiff and the said Adam R. Smith; that Smith represented to her husband that he could and would negotiate, in the east, a loan of money on the property described in the mortgage, for use in her husband's business; that for this purpose she signed the paper, which she supposes constitutes the mortgage in suit, the name of the grantee, the consideration and descrip-

tion of the note being left blank, with the understanding that the same was to be used for the purpose of negotiating a loan of money for the use of her husband, and for no other purpose; that the same was afterwards delivered by her husband, with the said blanks unfilled, to the said Adam R. Smith, for the purpose of negotiating, through him, a loan of money; that Smith fraudulently filled up the blanks therein to plaintiff, and never negotiated a loan of money.

In a subsequent answer, and the one upon which the chief reliance is placed, she denies that she executed, or even authorized the execution of a mortgage; alleges that her husband was in the habit of buying and selling lands " on time," and that she was in the habit of signing deeds in blank in large numbers, " without any filling up at all, without any grantee, property, consideration, or anything, but an ordinary blank form of printed deed; " that nota- ries public were in the habit of certifying acknowledgments of blank deeds thus signed without even seeing her. She alleges that this property was her homestead; that she never signed the mortgage in suit except in blank; that it was filled up in her absence, with the description of the property, note, consideration and grantee; that this was done without her knowledge or consent; that she would not willingly have signed a mortgage on her homestead; that she never consented to do so, or knew that she had signed a mortgage on her homestead for any purpose; and she denies that she ever acknowledged the mortgage before Stewart or any other officer. She also alleges that she never knew of the existence of the mortgage until this suit was brought, and never adopted or recognized it.

Issue was taken by the plaintiff upon these defenses. All of the testimony is before us. It is shown that her husband deeded the lot in question to her, shortly before their marriage. There is evidence tending to show that

upon or shortly after her marriage, she was presented by her brother with $1,000, which she gave to her husband in consideration of the previous conveyance of the lot to her; and that it was occupied by them as a home at the date of the mortgage, though subsequently it was sold and conveyed to other persons, and they left it and removed to Dubuque.

Smith testifies that he was at Des Moines the day of the date of the mortgage; that it was "handed to him by the defendant, Wm. H. Hervey, already executed and acknowledged, with the amount and name of mortgagee left blank therein, who asked me to negotiate it for him in such amount and to such persons as I might be able to, and gave me directions to fill in the amount and mortgagee's name, according to the amount in which, and the person with whom, I should be able to negotiate the same."

"Subsequently," Smith further testifies: "Some time during October, 1857, the amount and name of the mortgagee were filled in at Omaha, Nebraska, by Mr. Woolworth, a lawyer of that place, and the same was done by my direction and under authority, for that purpose given by the said Hervey to me at the time he handed the mortgage to me."

It is shown that the plaintiff, Simms, held at this time a note on Wm. H. Hervey, indorsed by Smith, for $2,100, and that Smith thus filled up the mortgage in suit and sent it by mail to the plaintiff to apply on the note for $2,100. The plaintiff knew nothing as to the manner in which the mortgage had been filled up. Smith does not testify that he was authorized by Hervey thus to apply it, and Hervey in express terms denies that Smith was thus authorized. Smith further testifies: "*I never had any conversation with Linda Hervey, and never received any authority of any kind in reference to such mortgage or any mortgage.*" "I received my instructions from Wm. H. Hervey at the time he

handed me the mortgage to fill up the blanks, and those instructions were verbal." "While the note and mortgage were in my hands, I learned that Hervey was in failing circumstances, and I negotiated the same and applied the same to the payment of a note of Hervey's for about $2,100, which I had previously indorsed to said Simms, and which was then past due."

The testimony of Mr. and Mrs. Hervey support the defenses alleged.

The cause was tried according to the second method of equitable trials, and certain special issues were submitted to the jury. These and the answers returned by the jury are as follows:

1. Was the mortgage sued on, when executed and delivered by the defendant, filled up with a description of the lot therein named?

*Ans.* Yes.

2. Was said mortgage at such time filled up with the name of the grantee, Francis Simms?

*Ans.* No.

3. Was said mortgage at such time filled up with a description of the note?

*Ans.* No.

4. When the defendant had signed said mortgage, to whom did they deliver it?

*Ans.* A. R. Smith.

5. Who delivered said mortgage to the plaintiff?

*Ans.* A. R. Smith.

6. Who wrote in said mortgage the name of the grantee, Francis Simms, and the description of the note it purports to secure?

*Ans.* A. R. Smith.

7. Had Adam R. Smith any written authority from defendants (or either, or if either, which) to fill in the name of said grantee and the description of the note?

*Ans.* No.

8. Were either of said defendants, or both, present when the mortgage was filled up with the name of the grantee and the description of the note?

*Ans.* No.

9. When Mrs. Hervey signed the mortgage herein sued on, had a description of. the property been inserted therein? and if not, who afterwards inserted such description of such property, and by what authority?

*Ans.* 1st. When Mrs. Hervey signed it, there was no description. 2d. By what authority? Wm. H. Hervey.

10. At the execution of the mortgage, who was the actual owner of the property described in the mortgage, to wit, lot 8 in block "A," &c. ?

*Ans.* Mrs. Hervey.

11. How much is due on the mortgage sued on?

*Ans.* $3,125.

The eleven preceding questions were asked by the defendants. The following questions were asked by the court:

*Ques.* Did the plaintiff in this case know, when the said mortgage came into his hands, anything about the particular manner of the execution thereof by Hervey and wife?

*Ans.* No.

*Ques.* Is the plaintiff an innocent purchaser of the mortgage, without knowledge of any irregularities in the execution thereof?

*Ans.* He is an innocent purchaser.

*Ques.* If Mrs. Hervey was the owner of the property described in the mortgage, did Simms, the plaintiff, know the fact when he purchased the same?

*Ans.* No.

There was no general verdict found by the jury. Upon the return of the special findings, the defendants moved the court for judgment thereon in their favor, which was

overruled and exceptions taken. A motion for a new trial was also made by the defendants and overruled, and exceptions also taken. And the court, on these findings, rendered a decree of foreclosure as prayed against both defendants, who now appeal and seek its reversal.

*Finch, Clark & Rice*, for the appellant.

I. The essential requisites of a deed are a grantor, a grantee, and a thing granted. 2 Wendell's Black., 296; 2 Kent, 450-462.

A blank paper, signed, sealed and delivered, and then written upon, is no deed, and inasmuch as it contained nothing, nothing could pass by it. *Duncan* v. *Hodges*, 4 McCord, 239; 1 Hill S. C., 267; *McKee* v. *Hicks*, 2 Dev., 379; *Davenport* v. *Sleight*, 2 Dev. & Batt., 381; *Ingram* v. *Little*, 14 Geo., 173; see case cited 14 U. S. Dig., 155; *Arrington* v. *Burton*, 19 Ala., 114; 13 U. S. Dig., 546; 5 Pike, 523; 9 Am. Law Reg., 608; 2 Pars. on Cont., 229-230.

II. For its execution, writing and delivery, — and the delivery must be in person, or by a duly authorized agent. 2 Wendell's Black., 295 and 306; 2 Kent, 450 to 462; 2 Brock., 64; 12 Wheat., 90.

III. Authority to an agent to execute a deed must be by deed, or, in other words, the authority of an agent to execute an instrument which the law requires to be in writing, or by deed, must be equal in dignity to the instrument to be executed; and no previous parol assent, *or subsequent parol adoption*, will sustain the act of the agent. Dunlap's Paley Agency, 156, and cases cited in note *a*, 2 Kent, 785, 7th ed.; Story on Cont., 129, § 1000; 2 Pars. on Cont., 229, 230; 1 Greenl. on Ev., § 568; *Hanford* v. *McNair*, 9 Wend., 55; *Blood* v. *Goodrich*, 9 Id.,

68; *Blood* v. *Goodrich*, 12 Id., 525; *Cross* v. *State Bank*, 5 Pike, 525; *McMurty* v. *Frank*, 4 Mon., 39; *Maus* v. *Worthington*, 3 Scam., 26; *Boyd* v. *Dodson*, 5 Humph., 37, and *Cummings* v. *Cassily*, 5 B. Monr., 74; 5 U. S. Dig., 588; *Tappan* v. *Redfield*, 1 Halst. Ch. (N. J.), 339 (1846); *Bragg* v. *Fessenden*, 11 Ill., 544; *Wheeler* v. *Nevins*, 34 Maine (4 Red.), 54; *Spofford* v. *Hobbs*, 29 Id. (10 Shep.), 148; *Kime* v. *Brooks*, 9 Ired., 218; *Rhodes* v. *Louthain*, 8 Black., 413; *Smith* v. *Dickinson*, 6 Humph., 261; 7 U. S. Dig.; 19 Ala., 114; 13 U. S. Dig., 546; *Worrall* v. *Munn*, 1 Seld. (N. Y.), 229; 14 Geo., 173; 14 U. S. Dig., 155; *Taylor* v. *McDonald's Heirs*, 2 Bibb, 420; 6 Wheat., 577; *Herndon* v. *Bascomb*, 8 Dana, 113; 9 Am. Law Reg., 608; 1 Am. Lead. Cases, 610; *Burns* v. *Lynde*, 6 Allen, 305; *Earle* v. *Earle*, 1 Spencer, 347; 2 Brock., 64; 12 Wheat., 30; *The People* v. *Bostwick*, 43 Barb.; see June No. Am. Law Reg., 505.

IV. Promissory notes and bills of exchange alone, from motives of public policy, have the elements of negotiability, and it is the policy of the law, that all other contracts required to be in writing, shall be taken with notice of every defect in their execution, or equities relating thereto. (5 Pike, 425.)

*Phillips & Phillips* for the appellee.

The doctrine that a deed can only be executed by authority, under seal, has no application in the determination of this cause; the cases cited by appellant are those determined in States where the common law prevailed at the time these cases were decided.

1. The use of private seals has been abolished in this State, and all written contracts including deeds, placed on a level with unsealed instruments at common law, except

that they impart a consideration. Rev., 1860, §§ 1823, 1824 and 1825.

2. A mortgage under our statute does not (as at common law) convey any title in the land, but creates simply a lien which is purely incident to the debt, requiring a judgment or decree, execution sale and deed of sheriff to convey the title. Rev., 1860, § 2217; *Courtney* v. *Carr*, 6 Iowa, 248.

3. This note and mortgage being executed and duly acknowledged by the grantors (although partly in blank) but being filled up before the same came into the hands of the plaintiff, and without his knowledge or procurement, and he being a holder for value, is a valid mortgage and binding on defendants. *Trustees Iowa College* v. *Hill*, 12 Iowa, 462, and note to same in 1 Am. Law Reg. (1862) 751 and cases there cited; *Young* v. *Grote*, 13 Eng. C. L. R., 491; *Hall* v. *Chandless*, Id., 430; *Lewis* v. *Burghman*, 6 Id., 560; *Wiley* v. *Moor*, 17 Serg. and Rawle, 438; *Violett* v. *Patton*, 5 Cranch, 142; *The Bank* v. *McCord*, 4 Dana, 191; *Dingely* v. *Dingly*, 5 Mass., 538; *Faulkner* v. *Bradley*, 2 Dana, 143; 2 Am. Lead. Cases, 212 to 215..

4. The signing, acknowledging and delivering the note and mortgage in blank, was an authority to Smith to fill up the blanks in accordance with the verbal directions, which he did.

5. The defendant, Linda Hervey, having executed and acknowledged the mortgage voluntarily, before an officer authorized by law to take such acknowledgment, and having put the same under the control of her husband and co-defendant herein, for the purpose of enabling him to raise money in conducting his business, cannot now, after they have received $1,800 thereon, be permitted to contradict the same, the plaintiff being an innocent holder of the same. *Baldwin* v. *Snowden*, 11 Ohio, 203; *McHenry* v. *Day and Wife*, 13 Iowa, 445.

6. The defendant and each of them are estopped to say

that this is not their mortgage when the same has been regularly acknowledged and so certified. Such certificate is conclusive of the execution of the instrument, unless they show fraud on the part of plaintiff in procuring the execution thereof, and this has not been claimed at any point in this case. *McNeeley* v. *Bucker*, 6 Blackf. (Ind.), 391; *Hartly* v. *Frost*, 6 Texas, 208; *Schrader* v. *Decker*, 9 Barr., 14; *Baldwin* v. *Snowden*, 11 Ohio, 203.

DILLON, J. — The case was, under the statute, tried to a jury as a *law* action, and must be so treated on this appeal. It is to be regretted that there were no issues submitted to determine the questions of fact, whether Mrs. Hervey ever acknowledged the mortgage. Nor were the questions submitted by counsel, framed with that precision which is desirable. Thus, for example, the first one assumes the "execution and delivery" of the mortgage "by the defendants;" whereas, Mrs. Hervey's defense is based upon the theory that she never *executed* (in the proper sense of that word) the instrument at all, or delivered the same to the plaintiff or any person for him. But we must take the case as it is; and it brings into view several very important questions.

The lot described in the mortgage was found by the jury to be the *separate property of Mrs. Hervey;* and such, 1. HUSBAND AND WIFE: mortgage. in the consideration of this appeal, must be taken to be the fact. Then the general question which is presented is, *what, in this State, is requisite to constitute a valid conveyance or mortgage, by a woman, of her separate real property?*

It is settled in this State that by an instrument *duly executed*, she may mortgage her property to secure her own or her husband's debt. *Patton* v. *Kinsman*, 17 Iowa, 428; *Jones* v. *Crosthwaite*, 17 Id., 393; *Stone* v. *Montgomery*, 35 Miss., 83.

. But here the immediate inquiry is, what constitutes such due execution? This requires an examination of the statutes of the State, and, intelligently, to understand them, they must be viewed in the light of the common law and the previous statutes.

<div style="margin-left:2em; font-size:small;">
2. —— conveyance: acknowledgment.
</div>

It is well known that a *feme covert* could not, at common law, during coverture, release her right of dower, or convey her own land by any *direct* mode of alienation. Distrust and jealousy of the marital power of the husband are supposed to be the foundation of this doctrine. Such a restraint on alienation could not, in the nature of things, be endured. And the common lawyers, with that fondness for subtilty which, at an early period, distinguished them, invented or resorted to the intricate, ingenious, cumbersome and expensive machinery of fines and common recoveries by which indirect modes, and by these only, could a wife's interest in her husband's or her own real estate be aliened. The conveyance by fines was early regulated by statute (18 Edw. I) in which proceeding the wife was a necessary party, and the statute required a privy examination in order to transfer or assure her estate to the cognizee or purchaser. Blackstone (2 Com., 355) maintains that she is barred by a fine, "because she is privately examined as to her voluntary consent, which removes the general suspicion of compulsion by the husband."

On the contrary, Mr. Hargrave (Harg. Co. Litt., 121 *n*) contends, that it is the *judicial proceedings*, and not the privy examination that gives the fine its binding and conclusive effect.

It is only material for our present purpose, to note that the privy examination was necessary because *required by statute*. See on the foregoing: *Kerns* v. *Peeler*, 4 Jones (Law) N. Car., 226–229, 1856; *Green* v. *Branton*, 1 Dev. Eq., 504–507, 1830, *per* RUFFIN, Ch. J.; *Jackson* v. *Gilchrist*, 15 Johns., 89; *Constantine* v. *Van Winkle*, 6 Hill, N. Y., 177,

1843; *S. C.*, 10 N. Y., 422; *Martin* v. *Dwelly*, 6 Wend., 9, 22, 1830; 1 Am. Jur., 73, 74.

But fines and recoveries were, it is believed, never adopted in this country. (2 Washb. Real Prop., 559, pl. 17, and authorities cited.) And certain it is, that these modes of assurance never prevailed in this State. Thus, by the ordinance of 1787 (Rev., § 928), subsequently extended over Iowa (Rev., pp. 947, 952; *O'Ferrall* v. *Simplot*, 4 Iowa, 381, 1857), it was provided, that until changed by statute " real estate may be conveyed by lease and release, or bargain and sale, signed, *sealed* and delivered by the person, being of full age, *in whom the estate may be*, and attested by two witnesses, * * * provided such conveyance be acknowledged, or the execution be duly proved and be recorded within one year." This would clearly allow *femes covert* to convey their real estate by pursuing this course.

The earliest act on the subject, January 4, 1840 (Laws 1840, ch. 28, p. 35), provided (§ 20) that "a married woman may relinquish her *dower* in any real estate of her husband, by any conveyance thereof executed by herself and husband, and acknowledged and certified in the manner hereinafter prescribed." This was literally reënacted February 16, 1843. Blue Book, p. 207, § 20. By the same act (act 1840, § 24–26, *et seq.*), it was provided that "a married woman may convey any of *her real estate* by any conveyance thereof executed by herself and husband, and acknowledged by such married woman, and certified in the manner hereinafter prescribed," viz., by a separate examination and acknowledgment; and this was also literally reënacted February 16, 1843. Blue Book, 207, § 24. And such, without quoting, was the provision of the act of January 2, 1846 (Laws, 1846, p. 4), the earliest married women's protective act in Iowa.

These statutes were framed, as will be observed, in analogy to conveyances by fine, that is, the wife must be

a party and be privily examined, and acknowledge the instrument. This is the American mode of assurance in place of fines and recoveries. And the rule is general in this country that married women can only convey in the manner and form provided by statute, and may make valid assurances by pursuing the statutory mode, whatever it may be. See, in illustration, *Green* v. *Branton*, 1 Dev. Eq., 504, 507, 1830, *Johns* v. *Reardon*, 11 Md., 465, 1857 ; *Needles* v. *Needles*, 7 Ohio, 432, 1857; *Dalton* v. *Murphy*, 30 Miss., 59; *Howell* v. *Ashmore*, N. J., 261; *Mariner* v. *Saunders*, 5 Gill. (Ill.), 113, 125, 1848 ; *Gill* v. *Fauntleroy*, 8 B. Mon., 177, 1847; *Elliott* v. *Pearsol*, 1 Pet., 328, 1825; *West* v. *West*, 10 Serg. & R., 445, 1823; *Price* v. *Hart*, 29 Mo., 171, 1859 ; *McDaniel* v. *Grace*, 15 Ark., 478; approved 20 Id., 508, 1859; *O'Ferral* v. *Simplot*, 4 Iowa, 481, 1857 ; *Blake* v. *Blake*, 7 Id., 46 ; *Grapengether* v. *Ferjervary*, 9 Id., 166, 173, 1859 ; 13 Id., 157.

Therefore, if an acknowledgment is not required by statute or usage, a deed by a married woman is good though not acknowledged. *Constantine* v. *Van Winkle*, 6 Hill (N. Y.), 177, 1843 ; reversing *S. C.*, 2 Hill, 240 ; re-affirmed, 10 N. Y. (6 Seld.), 422, 1853, by the Court of Appeals.

And a separate examination is not necessary in all of the States. 1 Am. Jur., 73 ; *Catlin* v. *Ware*, 9 Mass., 218; 13 Id., 223 ; 2 Washb., 559, pl. 17.

It is thus seen that in Iowa, down to 1851, when the Code took effect, a married woman could release dower, or convey her land by a voluntary deed "executed by herself and husband," to the validity of which, however, a privy examination and acknowledgment were, by statute, expressly made necessary. We are now ready to inquire into the changes made by the Code of 1851. Many portions of the prior acts were incorporated into the Code, but the framers omitted these sections of the Blue Book above

quoted (Blue Book, 207, §§ 20, 24), which specifically pointed out how a married woman might release, dower, or convey her separate estate. And the Code of 1851 provides, in express terms, no *specific* mode in which the dower right of the wife can be released or conveyed. There is no provision requiring any separate acknowledgment. No, such is contemplated. Code, § 1219, *et seq.* And there is no provision requiring any acknowledgment at all, in order to make the deed valid between the parties.

In the place of the provisions of the former law, the Code of 1851 (§ 1207), provided broadly that "*A married woman may convey her interest in real estate in the same manner as other persons.*" This section accomplishes two things: 1st, it removes her common law disability to convey; and, 2d, it points out the *mode* of conveyance — the same mode as if she were *sole*, or as if the owner were a man.

And the same policy is further carried out by the act of March 8, 1858 (Rev., 397, § 2255), which declares that "the *joining* of the wife with her husband in a conveyance of real estate passes any and all right of the wife," whether it be dower or fee. And no acknowledgment, separate or otherwise, by the wife is provided for or declared to be necessary in order to give the instrument this effect.

Under our law an acknowledgment is not necessary to the validity of a deed or mortgage between the parties. *Gould* v. *Woodward,* 4 G. Greene, 82; *Blain* v. *Stewart,* 2 Iowa, 378; Rev., § 2221.

Our statutes, since 1851, no longer require a privy acknowledgment of the wife, and hence no such acknowledgment is necessary. And since conveyances by married women are, by the statute (Code 1851, § 1207; Rev., §§ 2215, 2255), put upon the same footing as those by men or *feme sole,* it follows that no acknowledgment at all by a married woman is requisite to a valid execution of a deed releasing her dower or conveying her real estate. The

only effect of the want of such acknowledgment is, that it will not, when recorded, impart constructive notice of its existence. Rev. § 2221. (See this subject discussed by WRIGHT, Ch. J., in *Morris* v. *Sargent*, 18 Iowa, 90, but not determined; and see *Westfall* v. *Lee*, 7 Iowa, 12, and *McHenry* v. *Day*, 13 Iowa, 445, in which the observations respecting the acknowledgment, if to be understood as deeming it essential to the validity of the deed, are inconsistent with the view above expressed. These decisions were on instruments of date prior to the act of March 8, 1858.)

It follows, that although Mrs. Hervey may not (as she alleges, and as the evidence tends strongly to show) ever have acknowledged the mortgage in suit, still the want of acknowledgment alone, if the mortgage were otherwise valid and duly executed and delivered, would be no defense to the foreclosure proceeding of the plaintiff.

And this brings us to the next question, which is, *was the mortgage, as respects Mrs. Hervey, duly executed and delivered?* This involves the inquiry, *what, under our statute, are the essential requisites of a valid conveyance?* How far has the statute in this respect changed the common law? The requisites of a good deed at common law are clearly and correctly stated in Sheppard's Touchstone of Common Assurances. It is there (54, 55), laid down, that "Every well made deed must be written, *i. e.* the agreement must be *all written* [or written and printed] *before the sealing and delivering of it;* for if a man seal and deliver an empty piece of paper or parchment, albeit he do there withal commandment [verbally or by writing without seal] that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no good deed."

The same work, the Touchstone, thus enumerates,

3. DEED: execution and delivery.

besides writing, the other requisites of a good deed at common law:

"2. That there be a person able to contract, and to be contracted with, and a thing to be contracted for, and that *all these be set down by sufficient names*." (Id. 54.) "And if the name of the grantee be not contained in the premises, yet if it be in the *habendum*, it may be good enough." (Id., p. 75.) If made to a person disabled or incapable of taking, it is void. (Id., 55.)

"3. *Reading, i. e.,* if required.

"4. *Sealing, i. e.,* that the deed *so* written be sealed by the party, or by some other of his appointment (Id., 54), before the delivery of it." (Id., 57.)

"5. *Delivery, i. e.,* that the deed *so written* and *sealed* be delivered by the party, or some other of his appointment, as his deed (Id., 54), to the party to whom it is made, or to any other, by sufficient authority from him." (Id., 57.) A deed takes effect by delivery; but if "delivered before it be *sealed*, it is nothing worth." (Id., 58.) See also as to requisites of deeds, *Garrett* v. *Same,* 7 Mowr., 545–547, 1828; *Chiles* v. *Conley,* 2 Dana, 21, 23; *Ingram* v. *Little,* 14 Geo., 173; *McKee* v. *Hicks,* 2 Dev., 379, 1833; *Wiggins* v. *Lusk,* 12 Ill., 132; 4 Kent. Com., 462; *Swails* v. *Bustart,* 2 Head (Tenn.), 561, 1859; *Chauncey* v. *Arnold and Wife,* 24 N. Y., 330, and other cases cited *infra.*

Under these authorities, it is clear that the mortgage in question, having been filled up in the absence of Mrs. Hervey, without any writing under seal, or, indeed, any writing at all, it would not, at common law, be a good conveyance; certainly not, unless subsequently redelivered or otherwise adopted or ratified. It must be admitted that much of the doctrine, as laid down in the Touchstone, is owing to, or largely influenced by, the technical rules of the common law respecting *sealed* instruments.

By our statute (Rev., ch. 76), "The use of private seals in written contracts is abolished," &c.

This chapter refers to *contracts* alone, and we pass it by, as now immaterial, without stopping to consider whether, or how far it was intended to elevate unsealed, or to degrade sealed instruments.

But by section 29, clause 20, it is provided that " *The word 'deed' is applied to an instrument conveying lands, but does not imply a sealed instrument.*" And under it we have decided that a seal is not essential to the validity of a conveyance (*Pierson* v. *Armstrong*, 1 Iowa, 282, 1855), though formerly it was so. *Switzer* v. *Knapps*, 10 Id., 72.

The English doctrine is, that a deed or sealed instrument must be wholly written and perfected in all its essential and material parts before delivery. This, as we have shown, is the doctrine laid down by the Touchstone, and is. the modern doctrine as declared in the thoroughly considered case of *Hibble White* v. *McMornie*, 6 Mees. & Wels., 200, 1840, which expressly overruled *Texira* v. *Evans*. This case (*Texira* v. *Evans*), as it occupies so conspicuous a figure in the discussions on this subject, deserves to be stated. It is not reported, but is referred to by WILSON, J., 1 Anst., 225–229 (33 Geo. III), and thus stated by him: "I remember the case of *Texira* v. *Evans*, before Lord MANSFIELD, which was this: Evans wanted to borrow £400, or so much of it as his credit should be able to raise; for this purpose he executed a *bond, with blanks for the name and sum*, and sent an agent to raise money on the bond. Texira lent £200 on it, and the agent accordingly filled up the blanks with that sum and Texira's name, and delivered the bond to him. On *non est factum* pleaded, Lord MANSFIELD held it a good deed " — in other words, held that blanks in a sealed instrument of this character might be filled by parol authority. This is overruled in England, on the technical ground that

the agent ought to have been appointed under seal. Under our statute (Rev., ch. 76), there is no doubt that *Texira* v. *Evans* would be good and sound law in a like case, or a case not involving the conveyance of real estate. In this country the cases are in conflict. As supporting *Texira* v. *Evans*, see *Wooley* v. *Constant* (bill of sale), 4 Johns., 54, 1809; *Ex parte Kerwin* (appeal bonds), 8 Cow., 118, 1828; 6 Id., 60; *Bank of Buffalo* v. *Kortright* (transfer of stock in blank), 22 Wend., 348, 365, 1839; and see *Chauncey* v. *Arnold*, 24 N. Y., 330, 1862, which is latest N. Y. case and reviews the previous ones. *Wiley* v. *Moor*, 17 Serg. & R., 438, 1828 (blank bond); *Boardman* v. *Gore*, 1 Stew. (Ala.), 517, 1828 (blank payee inserted); *Richmond Manufacturing Company* v. *Davis* (payee's name and amount inserted in sealed bill), 7 Blackf., 412, 1845. Redfield on Railways, 48, § 35, disapproves of the case overruling *Texira* v. *Evans;* and the same case is also disapproved, and the contrary ruled as to the transfer of blank certificate of stock, by the Supreme Court of Connecticut in *The Bank* v. *R. R. Co.*, 1 Am. Law Reg. (N. S.), 210, 1861; *Speake* v. *United States*, 9 Cranch, 28, 1815; explained and commented on by Ch. J. MARSHALL, 2 Brock., 64, 72, 1822; *Gourdin* v. *Commander* (bond, obligee blank and filled in), 6 Rich, 497, 1852; *Duncan* v. *Hodges*, 4 McCord, S. C., 239, 1827 (deed for land with blank); NELSON, J., *Drury* v. *Foster*, 2 Wall, 24, 1864.

Against *Texira* v. *Evans*, directly or in effect, see *Boyd* v. *Boyd* (blank attachment bond), 2 Nott & McC., 125, 1819; *Gilbert* v. *Anthony* (prison bond), 1 Yerg., 69, 1821; 2 Id., 149; 1 Head. (Tenn.), 98; *Byers* v. *McClanahan* (bond for money), 6 Gill & J., 250, 1834; *Ayres* v. *Harness* (bond for money), 1 Ohio, 368, 1824; *United States* v. *Nelson* (official bonds, blank filled up); 2 Brock., 64, 122; *People* v. *Organ* ( official bond filled up without express authority), 27 Ill., 27, 1861; *Ingram* v. *Little* (deed

for land), 14 Geo., 173, 1853; *Davenport* v. *Sleight*, 2 Dev. & Batt., 381, 1837; approved *Kime* v. *Brooks* (bond), 9 Ired. N. C., 218; *Cross* v. *State Bank* (bond for money), 5 Pike (Ark.), 525, 1844; *McMurty* v. *Frank* (bond for money), 4 Monr. (Ky.), 39, 1826; *Arrington* v. *Benton* (bond for money), 19 Ala., 114, 1831; *Burns and Wife* v. *Lynde*, (blank deed for land, held void), 6 Allen, Mass., 305, 1863, distinctly overruling *Texira* v. *Evans; Drury* v. *Foster* (mortgagee's name and the amount blank; held void), 2 Wall (U. S. Rep.), 24, 1864.

An examination of these cases will show that they all, or substantially all, hold that if a specialty be required by law, it cannot be signed and sealed in blank and afterwards be *wholly* filled up by parol authority; and if this be done in the absence of the party so signing and sealing, it is not his deed unless subsequently redelivered, acknowledged or adopted.

But one class of the cases hold, that if only certain blanks are left, these may, according to *Texira* v. *Evans*, be filled up in the absence of the obligor, pursuant to parol authority from him.

But the class of cases which deny *Texira* v. *Evans*, hold otherwise.

But we have found no case which adjudges that deeds' or conveyances of *lands*, may be signed in blank, and be wholly filled up and delivered in the absence of the grantor, by virtue of parol authority, and yet be binding upon him without a subsequent adoption, confirmation or redelivery by him.

Conveyances of land in this State must be *in writing*, and have the grantor's name affixed to the same. Rev., ch. 96, §§ 2220, 2227.

Authority to sell land may be conferred by parol; but authority to "convey or complete a conveyance," must be conferred by writing. 2 Kent. Com., 614; *Tappan* v. *Red-*

*field*, 1 Halst. Ch., 339, 1846, and authorities cited; *Smith* v. *Dickerson*, 6 Humph., 261, 1845; *Riley* v. *Minor*, 29 Mo., 439, 1860; *Elliott* v. *Pierce*, 20 Ark., 508, 1859; *Worrall* v. *Meum*, 1 Seld. (N. Y.), 229.

A deed signed in blank is not, in the sense of the law, executed. These must still be under our statute, as at common law, a grantor, a grantee and a thing to be granted, and these must all be described in the writing. As to essentialness of grantee being named or designated, see Bac. Abr. Grant, C, and common law authorities cited; also, *Garnert* v. *Garnett's Lessee*, 7 Monr. (Ky.), 545; *Irwin* v. *Longworth*, 20 Ohio, 581, 602, 1851; *Chiles* v. *Conley's Heirs*, 2 Dana [Ky.], 21, 1834; 4 Kent. Com., 462; *Phelps* v. *Call*, 262, 1847; *Wiggins* v. *Lusk*, 12 Ill., 132; *Chanacey* v. *Arnold*, *infra*; *Fletcher* v. *Mansar* (christian name of husband as grantee left blank, he inserted his wife's name; held, that title was in the husband, there having been no delivery to the wife,), 5 Port. (Ind.), 267, 1859; *Drury* v. *Foster*, 2 Wall U. S. Rep., 20, 1864.

Sealing is dispensed with by the statute (§ 29, clause 20, *supra*) as one of the requisites of a conveyance of lands; and this was because with us seals had become a mere useless form, without significance. But the other essential common law requisites of a conveyance of land are not thereby abrogated; and regularly a deed should still, as heretofore, be perfect before delivery, as it takes effect from that time. See authorities above; also *McKee* v. *Hicks*, 2 Dev., 379, 1833, approved 2 Dev. & Batt. (Law), 381; *Brevard* v. *Neely*, 2 Sneed (Tenn.), 164, 1854.

The majority of those cases above cited, which hold that blanks in sealed instruments may be filled up by parol authority, relate to bonds for money, or official bonds, or instruments of a commercial nature, such as stock certificates and the like.

The doctrine has not been relaxed so as to extend to grants of land. Story Agency, § 48, and cases *infra*. "No person," says RUFFIN, Ch. J., *arguendo*, in *Davenport* v. *Sleight*, 2 Dev. & Batt. (Law), 381, 383, 1837, "will argue in favor of a deed of conveyance in which the name of the bargainee, for instance, or the description of the land was inserted after execution by the vendor, and in his absence, although done without corruption or by some person whom he requested to do it. It would subvert the whole policy of the law, which forbids titles from passing by parol, and requires the more permanent evidence of writing and sealing."

In the recent case of *Chauncey* v. *Arnold*, 24 N. Y., 330, 1862, the Court of Appeals decided that the name of a mortgagee should be inserted before delivery, and if not so inserted, the instrument did not become effectual by delivery, in such an imperfect state, to one who advanced money, upon the agreement that he should hold the instrument as security for his loan. The question, whether the paper might have been made valid and effectual by proof of parol authority to fill the blanks with the lender's name as mortgagee, was not decided.

DENIO, J., observes: "If we take into consideration only what is written, the paper is wholly without meaning. A transfer to a person not named, or in any way described or designated, is, unconnected with anything else, a mere nullity." To hold the instrument valid "would let in some of the mischief which the authors of the marriage settlement may be supposed to have intended to guard against in requiring a writing under seal to effect a disposition of the property. But although there is some diversity in the cases, I am of the opinion that none of those of modern date countenance the method of creating a title to or a lien upon land, which it is sought to uphold

in the present case. Cases arising upon bills and notes are plainly distinguishable." These, he admits, if issued in blank, may be filled up. " But no one," he adds, " would be bold enough to contend that a paper intended to operate as a mortgage could be put in circulation in such a shape, and by filling up could be made obligatory on any one. This doctrine is limited strictly to commercial paper, and is based solely upon its negotiable quality." 24 N. Y., 332, 333; Story Agency, § 48; *Ingram* v. *Little*, 14 Geo. 173, 1853, is to the same effect; also 2 Wash. Real P., 554, pl. 7.

In the still more recent case of *Burns and wife* v. *Lynde*, (6 Allen [Mass.], 305, 1863), it was decided by the Supreme Court of Massachusetts, in a case strikingly like the one before us, that a printed deed, signed and sealed in blank by a married woman, the blanks being filled up in *her absence*, but by her parol authority, was ineffectual, unless afterwards redelivered or adopted when in a completed state. The dangerous nature of any other rule is well enforced in the opinion. And in the still more recent case of *Drury* v. *Foster* (2 Wall., 24, 1864), it was held by the Supreme Court of the United States that a paper intended as a mortgage, but with *name of mortgagee* and *amount in blank*, when signed and acknowledged by the wife, was void as to her, though the plaintiff was a *bona fide* owner of the instrument.

*Duncan* v. *Hodges* (4 McCord, [South Car.] 239), 1827, is the only case we have met which has attempted to extend the doctrine of *Texira* v. *Evans* to conveyances of real estate.

In *Duncan* v. *Hodges*, the plaintiff signed and sealed a printed deed of conveyance of a tract of land, which was attested by two witnesses and left by the plaintiff with his agent, to be filled up whenever the defendant, who had agreed to buy it, should execute a bond for the purchase-

money. The defendant being ready to give his bond and accept the deed, the agent filled the blanks conveying the land to the defendant, and delivered it to him, who accepted it, and gave his bond for the purchase-money. The action was debt on the bond, and the defense was, that the deed was void, neither the grantor nor the subscribing witnesses being present when it was filled up and delivered. It was held that the plaintiff was entitled to recover on the bond. This decision was obviously right, upon the ground that the plaintiff, by accepting the bond given for the purchase-money, and suing upon and claiming the benefit of it, adopted, ratified and confirmed the delivery of the deed, or was estopped from denying it. As to subsequent adoption and estoppel, see *Drury* v. *Foster*, 2 Wall. U. S.., 24; *Parker*, v. *Hill*, 8 Metc., 447, 1844; *Hudson* v. *Revett*, 5 Bing., 368; 1 Greenl. Ev., § 568 *a*, note 6, and cases cited at end of note; *Camden Bank* v. *Hall*, 2 Green N. J., 583, 588; *Van Amruge* v. *Morton*, 4 Whart. (Pa.), 382, 387; *McNutt* v. *McMahan*, 1 Head. (Tenn.), 98; *Rhode* v. *Louthain*, 8 Blackf., 413; *Price* v. *Hart*, 29 Mo., 179; *Burns* v. *Lynde*, 6 Allen, 305, 310. But in delivering the opinion, another ground for the decision is taken, and is thus stated by JOHNSON, J. "The general rule is, that if a blank be signed, sealed and delivered and afterwards written, it is no deed, and the obvious reason is, that as there was nothing of substance contained in it, nothing could pass by it. But this rule was never intended to prescribe to the grantor, the order of time in which the several parts of a deed should be written. A thing to be granted, a person to whom, and the sealing and delivery, are some of those which are necessary, and the whole is consummated by delivery; and if the grantor should think proper to reverse this order in the manner of execution, but in the end makes it perfect, before delivery, it is a good deed. Thus it is said, that if a deed be made with

blanks and afterwards filled up, and delivered by the agent of the party, it is good. Anst., 229 (which is *Texira* v. *Evans*,) Com. Dig., *Fait*, A. (1), note (f), Day's Ed. It is not pretended that this deed was not perfect, as to ` form, when it was delivered by Gray, the plaintiff's agent, or that he was not instructed by the plaintiff to fill up the blanks, and deliver it. And according to this authority (*Texira* v. *Evans*) the deed is good.

This deed is distinguishable from the one under consideration, there being in ours no specific grantee intended, no express authority from the owner to fill up blanks and deliver to him, and no subsequent adoption of what had been done, by bringing an action on the bond given by the purchase-money, and claiming the benefit of the delivery of the deed.

We cannot, upon principle or authority, uphold the validity of a "*floating*" deed or mortgage of land; that is, an instrument intended to circulate or float in commercial or business channels after it has parted from the possession of the grantor, and when it finds an owner have his name inserted in the absence of the grantor without authority in writing. 6 M. & W., 200. Such an instrument is not valid *proprio vigore* as a conveyance or charge on lands, though it, or the transaction, may, in certain cases, give equitable right. *Switzer* v. *Knapps*, 10 Iowa, 72.

We need not, in this case, conclusively deny that power to fill a material blank in a conveyance otherwise duly executed, might be conferred by parol, but the simpler, better or safer doctrine, in the writer's opinion, is, to deny even this power and the validity, as between the parties, of a conveyance thus executed, unless ! it has been subsequently redelivered, or at least confirmed, ratified or adopted by the grantor.

*4. — parol authority to fill blank.*

But admitting that certain blanks may, before delivery,

be filled by parol authority from the owner, still the present decree must be reversed.

The property was the wife's. At least it is so to be regarded on this appeal. She signed wholly in blank. She was not present when the paper was filled up. She is not shown to have received, enjoyed and retained any of the benefits arising from its negotiation, or otherwise to have ratified and consented to the act of filling up and negotiating. She is in no manner equitably estopped to make the defense that the conveyance is not valid. *Drury* v. *Foster*, *supra*. It was filled up by Mr. Hervey, in her absence and without her knowledge, with the description of the lot; *and there is no finding that she authorized, verbally or otherwise, this to be done.* It was filled up with the name of the grantee and the description of the note by Smith, or under his order, when in Nebraska; and Smith does not pretend that he had any authority, verbal or otherwise, from *Mrs.* Hervey to do so. On the contrary, he swears that he supposed the property was Mr. Hervey's, and that he acted, in filling the blanks, under the husband's verbal authority and instructions. The law, of course, confers upon the husband no such power over the property of his wife. The penalty of his misuse of her signature cannot, *certainly as between the parties to the instrument,* be the loss of her property. The case is distinguishable, and entirely different from *McHenry* v. *Day* (13 Iowa, 445), and *Baldwin* v. *Snowden* (11 Ohio, 203.)

We only observe that very different equitable considerations would apply, if the property were or shall be found to be the husband's, and that he has received the benefits of the negotiation of the mortgage to the plaintiff, or otherwise adopted it.

Decree reversed and trial *de novo* ordered.

<div align="right">Reversed.</div>