EDWARD P. McDONOUGH, ET AL. *v.* THE ROLAND
PARK CO.

[No. 78, October Term, 1947.]

*Decided February 18, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*James C. Morton, Jr.,* and *John G. Rouse, Jr.,* for the appellants.

*Piper, Watkins, Avirett & Egerton* and *J. Martin Mc-*Donough for the appellee.

COLLINS, J., delivered the opinion of the Court.

On September 5, 1849, one Jacob Mason conveyed a tract of land, located on Smith and Old Pimlico Roads in Baltimore County, now in Baltimore City, to one George W. Smith. The deed contained the following reservation:

"Reserving therefrom the graveyard situated upon said above described parcel of ground the same to be fifty feet square and to be used only as a burial place by the said Jacob Mason and his heirs with free ingress and egress thereto at all times hereafter by said Jacob Mason and his heirs. * * *

"To Have and To Hold the parcel of ground above described * * * subject nevertheless to the reservation made as aforesaid of the graveyard and the right of way to and from the same at all times as aforesaid. * * *"
Jacob Mason died in 1876 and was buried in Mount Olivet Cemetery.

The property in question was conveyed five times be-September 5, 1849, and July 24, 1946. On the latter date the transfer was to the Roland Park Company, the appellee in this case. In none of the deeds or instruments in the chain of title after 1849 is any mention made of a graveyard.

The Roland Park Company, appellee, on March 11, 1947, filed a bill of complaint in Circuit Court Number 2 of Baltimore City, alleging in effect the following matters: the acquisition by it of the aforesaid property,

the reservation therein, and the five transfers herein-before mentioned. The bill also alleged that the appellee has been unable to locate said graveyard anywhere upon the parcel of ground described. Upon information and belief it avers that said graveyard, if ever laid out or used for burial, has not been in existence for more than forty years. The plaintiff endeavoring to locate the heirs of Jacob Mason, published an advertisement in the Baltimore Sun. As a result of that advertisement and other diligent efforts the appellee was able to locate the appellants as the persons claiming to be the heirs of Jacob Mason.

The bill asks that the title to the parcel of land here in question be quieted and the cloud thereon be removed by decree. The bill also asked that the alleged claim of the defendants, the appellants here, to a right of burial in a graveyard and an easement of ingress and egress thereto in and on the appellee's property above described be declared null and void. There was also a prayer for other and further relief.

After testimony was taken, the Chancellor signed a decree ordering that the title of the appellee in and to the property hereinbefore described be quieted, and that the cloud thereon resulting from the reservation herein-before mentioned be removed. He also decreed that the claim of the appellants including all heirs of Jacob Mason, known and unknown, living, dead, or hereafter born, to a right of burial in the graveyard and an easement of ingress and egress thereto be declared null and void. From that decree the appellants appeal.

John J. Roche testified that he was 77 years of age, having been born in 1870. He has always lived along the Pimlico Road and has lived within two blocks of the property in dispute all his life and lived next to it for many years. He said, when asked whether he ever knew of a graveyard on the place, "There was supposed to be one." When asked the question, "Did you ever see a graveyard there?" he answered, "No, I never did. I saw where there was supposed to be one but I never

saw any graves or stones. There was a flower garden there. They used to attend market and they always had beautiful flowers around there. In my boyhood days there was supposed to be a graveyard." He said that he never knew of any one being buried there. When asked the question, "If anybody had been buried there, would you have known it?" he answered, "Oh, yes, certainly I would. They could not get by me without my knowing it; me being around there all my life. We never knew of anybody buried there." He examined the place lately and found no signs of a graveyard then. He said the flower garden had not been kept up since the Smiths left the property. The last of the Smiths sold the property in 1924. He said this garden was about 50 feet from the house and on the north side of the house. Mr. Dietz, one of the engineers for the Roland Park Company, testified that the place that Mr. Roche pointed out "what he thought could have at one time been a graveyard" was to the east of the house. When asked the question, "What would be the longest ago that you would say that there was no sign of a graveyard or that it was not even known as a graveyard?" Mr. Roche answered, "Well, I could not tell you. It would be out of my recollection entirely."

William L. Elder testified that he acquired the property in March of 1925 and sold it to the appellee in July, 1946. He used it for a stock farm and later rented it. He fenced in the whole property and said that during the twenty-one years he owned it, he found no evidence of a graveyard there, never knew of any graveyard and never knew of any claim to a graveyard. No one ever made inquiry or claimed any right to burial in the property nor did any one claim right of ingress and egress to any graveyard.

Mr. John W. Mowbray, president of the Roland Park Company, appellee, testified that there was approximately 30 acres in the tract originally belonging to Jacob Mason. The appellee has spent for land in that area about $140,000. The City Plan Commission has a plan to ex-

tend Green Spring Avenue through the Mason tract. Mr. Mowbray made every effort to locate the missing heirs by contacting people in the area and by advertising. The results were negligible except for the heirs located by the advertisements in the newspapers. Ever since the appellee acquired the property in 1946, every effort has been made to get information regarding the graveyard. He had the engineering department with a crew of competent engineers lay out the tract so that some one walked over every 25 feet of it, as the graveyard was supposed to be 50 feet in width. With some one walking over the land every 25 feet and looking 12½ feet on each side of him, they thought that if the graveyard existed it would certainly be located in that manner. The land was scoured from one boundary to another and no evidence of a graveyard was found. They worked during the winter and autumn in order to have the best opportunity to inspect the ground.

William A. Dietz, a civil engineer employed by the appellee, stated that he had made a search and inspection of the property in question for the so-called graveyard. He and his men walked back and forth the entire length and width of the tract in 25 foot squares and found no evidence of a grave or graveyard, tombstones, markers, or monuments, and nothing that would ordinarily indicate a grave. He stated that he went over the property with Mr. John Roche. He said Mr. Roche pointed out what he thought could have at one time been a graveyard. With Mr. Roche they found a clump of trees to the *east* of the house which was heavily overgrown with old shrubs and bushes. They found no evidence of "depression, mound, tombstone, monument; nothing in there at all."

Mrs. Grace Johnson, whose mother was a great-niece of Jacob Mason, testified that she always heard her mother speak of having a graveyard left to her out in the direction of Pimlico, but she did not know exactly where it was. Neither she nor her mother made any effort to locate this so-called graveyard and she knows

of no one who every made such an effort. She testified that Jacob Mason was buried in Mount Olivet Cemetery.

It was said in the case of *Berry v. Derwart*, 55 Md. 66, at page 72: "It is perfectly well settled, both upon reason and authority, that every deed of conveyance, in order to transfer title, must either in terms, or by reference, or other designation, give such description of the subject-matter intended to be conveyed, as will be sufficient to identify the same with reasonable certainty. Here, the deed not professing to convey all the property of the grantor, or even all of his lots or real estate on Lee Street; there is really no description or designation of the five building lots on the one side or the other of Lee Street; and therefore it would be impossible to locate the lot claimed by the plaintiff, under the description contained in the deed. It is not a question of the sufficiency of the description of the property in the declaration, as seems to be supposed by the appellant, but of the sufficiency of the description in a muniment of title." *State v. Maryland Casualty Company*, 164 Md. 69, 76, 163 A. 856.

It was said by this Court in the case of *Neel v. Hughes*, 10 Gill & J. 7, at page 10: "Every conveyance must either on its face, or by words of reference, give to the subject intended to be conveyed, such a description as to identify it. If it be land it must be such as to afford the means of locating it."

In the case of *Mooney v. Cooledge*, 30 Ark. 640, a tract of 147 acres was conveyed to a cemetery company. One acre of this tract had been previously deeded, to be forever kept as a family burial ground. In that family burial ground had been buried many family relatives. The grantor's heirs filed a bill alleging that the cemetery company was encroaching upon and claiming title to the one acre reserved as the family burial ground. The Court held in that case that there was no question that the grantor intended to convey only 146 acres leaving out one acre to be kept as a graveyard. There was nothing to locate this acre of ground in the 147-acre tract. In

order to effect this purpose it was necessary to define and identify it. Because of such uncertainty in locating the acre of land intended to be reserved, the court held the reservation void.

It is not at all certain that there was ever a graveyard on the property in the instant case. The words in the reservation, "situated upon" would tend to show the existence of a graveyard. However, the words, "The same to be fifty feet square", indicate that at the time the reservation was made no particular area had been selected. Further, the words, "to be used only as a burial place for said Jacob Mason and his heirs", indicate that the parties had not yet created the graveyard contemplated. No reseration was made for any one already dead and buried. If a body had been interred there the reservation would not cover that. Furthermore, Jacob Mason died in 1876 and was not buried there. Mr. Roche who was born in 1870 and who was about six years of age when Jacob Mason died said that he never knew of any one to be buried there and he would have known it if a burial had been made. Mrs. Grace Johnson, the great-great-niece of Jacob Mason, said she knew of no relatives buried there. The testimony as to the careful examination of the premises shows no graveyard at present and no evidence of any graveyard in the past. It is harly consistent that ground which was used for the commercial raising of flowers was contemplated as a graveyard where the flower beds would be torn up and destroyed by the digging of graves.

In this reservation there is certainly no description of the location of the graveyard sufficient to identify it and it appears extremely doubtful whether there was any graveyard established at the time the reservation was made. In fact the words of the reservation and the testimony indicate the contrary. To hold this reservation still in effect would be to hold that any part of the 30 acres conveyed by the deed was subject to the reservation, and would cloud the title to the whole 30 acres. Such was never the intention of the parties.

The existence of the graveyard not having been established, the failure to locate any graveyard on the property at the present time, the absence of evidence that bodies were ever interred there, and the lack of sufficient description in the reservation to identify the intended graveyard with reasonable certainty, all lead us to the opinion that the reservation in question here is wholly inoperative under the authorities hereinbefore cited. The decree must be affirmed.

*Decree affirmed, with costs.*