In the Matter of the ESTATE OF Guy C. SEVERSON, Deceased.

Raymond J. SEVERSON and Ronald E. Severson, Coexecutors of the Estate of Guy C. Severson, Appellees,

v.

Gary Ray SEVERSON, Betty Ann Severson Sniff, Jane Eileen Severson Doorley, George Henry Severson, John Paul Severson, et al., Appellants.

No. 89–498.

Supreme Court of Iowa.

July 18, 1990.

**474**

Daniel C. Galvin of O'Brien, Galvin & Moeller, Sioux City, for appellants.

James F. Gaukel of Gaukel, Nevins & Westergaard, Mapleton, and Michael Paul Jensen, Onawa, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Guy C. Severson died testate in February 1987. The fighting issue in this case is whether his real estate should be distributed in accordance with his will and a revocable trust instrument signed in 1975, or in accordance with an irrevocable trust instrument signed in 1976. The district court ruled that it should be distributed in accordance with the former documents. The court of appeals reversed. Because we agree with the district court, we vacate the decision of the court of appeals and affirm the judgment of the district court.

Our review in this declaratory judgment action in probate is de novo. *See* Iowa Code § 633.33 (1987); Iowa R.App. P. 4.

I. *Background facts and proceedings.* Guy C. Severson was a farmer who had three sons: Glenn, Raymond and Ronald Severson. Guy, Glenn and Raymond farmed together on land owned by Guy. Glenn died sometime prior to 1975, and was survived by a wife and children (Glenn's children are appellants in this case). After Glenn died, Raymond continued farming with Guy.

In 1975, Raymond and Ronald went with Guy to the Omaha, Nebraska office of attorney Ronald Parsonage. Guy wanted Raymond and Ronald to have authority to manage his day-to-day business affairs, but wanted to retain ultimate control of his assets. Guy also wanted to plan his estate.

With the help of Parsonage, Guy settled on a plan by which all of his real and personal property would be placed in a revocable inter vivos trust for his benefit during his lifetime, and for the benefit of his children and grandchildren (including Glenn's children) thereafter. Raymond and Ronald would be cotrustees of this trust. Under the terms of Guy's will, any property remaining in his name at his death would "pour over" into the revocable trust and then be administered and eventually distributed according to the terms of the revocable trust instrument. The will also would grant Raymond an option to purchase any land in Guy's estate at its inheritance tax appraisal value.

In addition, an irrevocable inter vivos trust would be established with Guy as settlor, Raymond and Ronald as cotrustees, and Guy's grandchildren (including Glenn's children) as beneficiaries. The purpose of this arrangement was to enable Guy to reduce the value of his estate, if that became necessary to minimize the federal estate tax. Parsonage advised Guy that the irrevocable trust should be funded only with "sums of money which would qualify either for the annual exclusion, which at the time was $3,000 per beneficiary, and the lifetime gift exemption."

The revocable trust instrument was signed by Guy, Raymond and Ronald at the Parsonage law office in October 1975. Parsonage was present. The will was duly executed the same day. Neither instrument was ever recorded.

Sometime between October 1975 and May 1976, Raymond obtained the irrevocable trust instrument prepared by Parsonage. On May 25, 1976, the irrevocable trust instrument was signed by Guy, Raymond and Ronald at a bank near Guy's home. Parsonage was not present. Among other things, this instrument provides:

*Trust Property.* The Trustor [Guy] hereby irrevocably assigns to the Trustee [Raymond and Ronald, cotrustees] in trust, the property listed in Exhibit "A,"

attached hereto, hereinafter referred to as the "Trust Property."

Exhibit A was not with the irrevocable trust instrument, let alone attached to it, when the instrument was signed. In fact, the record is ambiguous as to whether Exhibit A even existed when the irrevocable trust instrument was signed. Guy never saw Exhibit A, and Raymond and Ronald had no knowledge of Exhibit A until after Guy's death.

Also on May 25, 1976, Guy, Raymond and Ronald signed a "verification" of the revocable trust. The verification is a document which recites that the revocable trust "remains in full force and effect."

In July 1976, Guy assigned all of his personal property to the revocable trust, including his machinery, crops and livestock.

On March 17, 1977, Raymond filed the irrevocable trust instrument and the verification of the revocable trust with the Monona County recorder. No Exhibit A to the irrevocable trust instrument was provided to the recorder by Raymond. Neither Guy nor Parsonage had instructed Raymond to record these documents. Raymond testified that he took this action on his own.

While attempting to record the irrevocable trust instrument, the recorder noticed that Exhibit A—referred to in the trust instrument—was not attached. Apparently because the trust instrument was typed on paper bearing the name of Parsonage's law firm, the recorder telephoned that office and informed someone that Exhibit A to the Severson irrevocable trust instrument was missing.

On March 18, a document entitled "Exhibit A to the Irrevocable Trust Agreement of Guy C. Severson" was mailed to the Monona County recorder, along with a memorandum over Parsonage's signature explaining that Exhibit A "should have been attached to Guy Severson's Irrevocable Trust Agreement." Exhibit A contained legal descriptions of Guy's real estate. Parsonage testified that both Exhibit A and the memorandum were prepared and mailed by a paralegal assistant under his supervision, although the record is ambiguous as to whether Exhibit A existed prior to March 18 or was created that day. Neither Parsonage nor his paralegal consulted Guy, Raymond or Ronald before mailing Exhibit A to the recorder.

Exhibit A was never recorded. It is not in the Monona County recorder's records. The recorder apparently recorded the irrevocable trust agreement and the verification of the revocable trust, but discarded Exhibit A.

Soon after March 18, Parsonage reviewed his Severson file and found that a mistake had been made. Guy's real estate was supposed to have been placed in the revocable trust; it should not have been described in Exhibit A to the irrevocable trust instrument. Parsonage instructed his associate, Richard Shinners, to straighten things out. Parsonage was not overly concerned, however, because he believed that under Iowa law, Guy's real estate could not have been placed in the irrevocable trust simply by signing and recording the irrevocable trust instrument and recording Exhibit A. Parsonage believed that a conveyance of real estate in Iowa could be accomplished only by "deed." By the term "deed," Parsonage seems to mean a standard warranty deed form similar to the ones Shinners eventually provided to Guy for use in funding the revocable trust.

On April 6, Shinners wrote to Raymond and Ronald, cotrustees. In the letter, Shinners instructed Raymond and Ronald that Guy's real estate should be conveyed to them as cotrustees of the revocable trust. Warranty deed forms were provided for that purpose, lacking only the appropriate signatures. The letter continued:

Because of a recent change in the Federal Estate and Gift Tax laws, it is not advisable to put property into the Irrevocable Trust Agreement dated May 25, 1976. I don't believe that any property has been put into this trust yet. If something has been put into this trust, let me know. Also, I have been told that you filed this Trust up in the Recorder's Office. Although such a filing is not likely to cause any real problems, it would be

better if you could have the Trust taken out of the files. Talk to the woman at the Recorder's Office, and see if this can be done.

On June 10, Guy signed the warranty deed forms provided by Shinners. The deeds purported to convey Guy's real estate to Raymond and Ronald as cotrustees of the revocable trust. These deeds were recorded June 24.

Since 1977, Guy's property has been managed in accordance with the terms of the revocable trust. During his lifetime, all income from the subject real estate was paid out for the benefit of Guy or accumulated in the revocable trust. The irrevocable trust was treated by all concerned as if it were not funded.

Guy died in February 1987. He never saw Exhibit A. From the record it appears that Raymond and Ronald did not see Exhibit A until after Guy's death. Parsonage apparently had no further dealings in the matter after 1977.

Guy's will was admitted to probate soon after his death. In October 1988, Raymond and Ronald, coexecutors of Guy's estate, filed this declaratory judgment action. The petition seeks a declaration of whether the subject real estate should be distributed in accordance with the will and revocable trust instrument, or in accordance with the irrevocable trust instrument. The record does not reveal how Exhibit A came to the coexecutors' attention.

The district court ruled that the subject real estate was not conveyed to the irrevocable trust by the signing and recording of the irrevocable trust instrument; rather, the real estate was conveyed to the revocable trust in June 1977 by the warranty deeds. The court ordered that the land be distributed in accordance with the will and revocable trust instrument.

Glenn's children appealed. We transferred the case to the court of appeals, which ruled that the land had been conveyed to the irrevocable trust by the signing and recording of the irrevocable trust instrument. The court of appeals considered the evidence of Parsonage's mistake in supplying Exhibit A to the recorder insufficient to

set the conveyance aside. Thus, the court of appeals reversed the judgment of the district court and ordered that the land be distributed in accordance with the irrevocable trust instrument.

We granted the coexecutors' application for further review.

II. *Who holds legal title to the subject real estate?* Resolution of this dispute hinges primarily, if not entirely, on the answer to one question: was the subject real estate conveyed to the irrevocable trust by the signing and recording of the irrevocable trust instrument?

[1] Title to real estate in Iowa may be conveyed in a trust instrument. The fact that an instrument is not captioned "deed" does not deprive it of legal effect as a conveyance of real estate, provided it is otherwise valid as such a conveyance. *See generally* Patton, *Conveyancing In Iowa,* 36 Iowa Code Ann. 389 (West 1950) (any writing may be effective as a legal conveyance of real estate if it names the parties grantor and grantee, contains words of grant, describes the land affected, is signed by the grantor, and is "delivered"; effect on rights of third parties may also depend on notice or recording). In fact, in common legal usage the term "deed" means "a conveyance of realty." *Black's Law Dictionary* 373 (5th ed. 1979).

Iowa Code section 557.10 provides that declarations of express trusts in relation to real estate must be executed in the same manner as deeds of conveyance.

■ The evidence is that Exhibit A may not have existed when Guy signed the irrevocable trust instrument. Even if it existed, Guy had not seen it and did not know its content. After the irrevocable trust instrument was signed, Exhibit A was never in Guy's possession. Nor was Exhibit A brought to his attention. From all that appears in the record, Guy was completely unaware that Parsonage had provided a copy of Exhibit A to the recorder.

Under these circumstances, we think this case is directly analogous to a case in which a grantor of real estate signs and

delivers a deed which lacks any description of the property supposedly conveyed. In such a case, the rule derived from *Simms v. Hervey*, 19 Iowa 273 (1865), applies.

In *Simms*, a wife signed a mortgage instrument left blank as to the description of the property, consideration and grantee. *Id.* at 278–79. Unbeknownst to the wife, the blanks were later filled in by her husband or at his direction, and the instrument was delivered to the plaintiff. *Id.* The instrument purported to mortgage the wife's real estate to the plaintiff for a given debt. *Id.* at 275. In denying plaintiff's petition for foreclosure on the ground that the wife had neither authorized her husband to fill in the blanks of the mortgage instrument so as to encumber her real estate nor ratified her husband's actions, the court stated:

> We need not, in this case, conclusively deny that power to fill a material blank in a conveyance otherwise duly executed might be conferred by parol, *but the simpler, better or safer doctrine, in the writer's opinion, is to deny even this power and the validity, as between the parties, of a conveyance thus executed, unless it has been subsequently redelivered, or at least confirmed, ratified or adopted by the grantor.*

*Id.* at 297 (emphasis added).

Since *Simms*, this court has rejected the view that authority to fill blanks in a signed instrument of conveyance cannot be conferred by parol, when the blanks are for "the name of the grantee and the consideration." *Creveling v. Banta*, 138 Iowa 47, 55, 115 N.W. 598, 601 (1908) (delivery of deed left blank as to grantee and consideration carries implied authority to fill the blanks). We have found no Iowa case rejecting that view, however, when the blank is for the description of the real property supposedly conveyed.

There may be good reason to treat deeds left blank as to the land description more cautiously than deeds left blank as to the grantee and consideration. One court observed that:

> [f]illing in a description stands upon an entirely different footing from that of filling in the name of a grantee in a deed otherwise lawfully executed. In the latter instance, the grantor has fully indicated his intention to divest himself of his title to certain definitely described property, and the filling in of the name of the grantee may be said to be but a fulfillment of that intention; in the former instance no such intention is indicated nor can it be inferred.

*Barth v. Barth*, 19 Wash.2d 543, 557–58, 143 P.2d 542, 549 (1943) (unlike signed deed left blank as to grantee, no inference of authority to fill in a land description arises from mere possession of signed deed left blank as to land description). The general rule appears to be that authority to complete a deed left blank as to the land description may be conferred by parol, but no inference of that authority arises from mere possession of such a deed. *See* 23 Am.Jur.2d *Deeds* § 49 (1983); Annotation, *Effect of Supplying of Description of Property Conveyed After Manual Delivery of Deed or Mortgage*, 11 A.L.R.2d 1372 (1950 & Supp.1985, 1990). We will assume, without deciding, that the general rule is followed in Iowa.

Did Guy authorize attorney Parsonage or Parsonage's paralegal to supply the description of real property necessary to complete the otherwise valid conveyance found in the irrevocable trust instrument? The answer clearly is that he did not.

As noted previously, the evidence is that Exhibit A may not have existed when Guy signed the irrevocable trust instrument. Even if it existed, Guy had not seen it and did not know its content, and Parsonage did not consult Guy before Exhibit A was mailed to the county recorder. There is no evidence that Guy authorized Parsonage to supply a description of all of his real estate as Exhibit A to the irrevocable trust instrument. On the other hand, there is overwhelming evidence that Guy did not intend to place his real estate in the irrevocable trust. To do so would have immediately and permanently deprived him of his chief source of income and all control of his assets (thereby defeating the purpose of the revocable trust), disinherited his sons to

a great extent, defeated the tax-saving purpose of the irrevocable trust, and contradicted his expressed intention to follow Parsonage's advice.

■ Did Guy redeliver, confirm, ratify or adopt Exhibit A? Again, the answer clearly is that he did not.

After the irrevocable trust instrument was signed, Exhibit A was never in Guy's possession, nor was it brought to his attention. From all that appears in the record, Guy was unaware that an Exhibit A had been created, or that Parsonage had provided an Exhibit A to the recorder. Raymond and Ronald had no knowledge of Exhibit A until after Guy's death, and Exhibit A was not in the public records. There is no evidence that Guy redelivered, confirmed, ratified or adopted Exhibit A in any manner.

There are no facts in this case giving rise to any claim of estoppel.

In conclusion, we believe that the irrevocable trust instrument is ineffective as an instrument of conveyance because by any applicable legal theory, the instrument as delivered lacks a description of the real property that appellants contend it conveyed.

III. *Disposition.* Upon de novo review, we agree with the district court that the subject real estate was not conveyed to the irrevocable trust by the signing and recording of the irrevocable trust instrument. We, therefore, vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.