992 A.2d 490

## TAYLOR ELECTRIC CO., INC.

v.

## FIRST MARINER BANK.

### No. 2280, Sept. Term, 2008.

Court of Special Appeals of Maryland.

March 29, 2010.

Frank J. Emig, Greenbelt, for appellant.

Robert A. Scott (Ballard, Spahr, Andrews & Ingersoll, LLP, on the brief), Baltimore, for appellee.

Panel: DAVIS, ZARNOCH and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

DAVIS, Judge.

This case arises from a dispute over lien priority. Appellant, Taylor Electric Co., Inc. (Taylor), appeals from the judgment of the Circuit Court for Prince George's County granting summary judgment and declaratory relief in favor of appellee, First Mariner Bank (First Mariner). Appellant presents this Court with four questions,[1] which we have simplified as one core question:

Did the circuit court err in granting summary judgment in favor of appellee?

---

1. Appellant presents this Court with the following questions:
   I. Was the Circuit Court correct in its ruling that the deed of trust recorded on November 22, 2006, was insufficient to create a security interest for FMB in the Pro Quality property?
   II. Did Taylor's mechanics [sic] lien relate back to when its complaint was filed based upon *lis pendens* and have priority over FMB's re-recorded deed of trust?
   III. Did FMB even acquire a lien against Pro Quality's property as a result of the unauthorized alterations made to the re-recorded deed of trust?
   IV. Did FMB ever acquire an equitable lien against Pro Quality's property and, if so, did such lien have priority over Taylor's mechanics' lien?

For the reasons that follow, we answer appellant's question in the negative. As we shall explain, *infra,* we affirm the judgment of the trial court, but not for the reasons set forth by the court.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 24, 2006, appellee entered into a loan agreement with Pro Quality Construction, Inc. (Pro Quality), which provided that First Mariner agreed to loan Pro Quality $811,000 and Pro Quality agreed to give First Mariner a first-priority deed of trust on property known as 15410 Jamies Way, Accokeek, Prince George's County, Maryland. On the same day, Barry Lagana, owner and President of Pro Quality, executed a deed of trust in favor of appellee. The title company, Buyer's Title, sent the deed of trust to the Circuit Court for Prince George's County (the circuit court) the next day for recording.

The circuit court rejected the deed because, in the interim, the property taxes had become due. Buyer's Title again sent the deed of trust to the circuit court for recording and it was rejected a second time on September 6, 2006. Finally, after a third attempt, the circuit court recorded the deed of trust on November 22, 2006 in the land records of Prince George's County. Although recorded, the deed of trust did not contain a description of the property.

On December 13, 2006, appellant filed a petition for a mechanic's lien against Pro Quality on the property. In the interim, Buyer's Title sent another copy of the deed of trust to the circuit court with an attachment containing a description of the property. The deed of trust contained the following statement along the bottom of each page: "This Deed of Trust is being re-recorded to include the Legal Description." It was recorded on February 2, 2007 in the land records for Prince George's County, with the property description embodied in Exhibit A.

Thereafter, on March 5, 2007, the circuit court granted appellant's petition for a mechanics' lien against the property.

The circuit court thereafter authorized public sale to satisfy the mechanics' lien. The proceedings were stayed pending the determination of lien priority. On August 13, 2007, appellant filed a Complaint for Declaratory Relief and Other Relief, seeking declaration of the mechanics' lien's priority over appellee's deed of trust and, alternatively, appellant sought "marshaling of assets" to satisfy its debt. On May 29, 2008, appellant filed a Motion for Summary Judgment, arguing that there was no dispute of material fact and that it was entitled to judgment as a matter of law. Specifically, appellant argued that appellee's initial deed of trust, recorded on November 22, 2006, was invalid because it lacked a description of the property. Additionally, appellant argued, its mechanics' lien had priority over the deed of trust that was later "re-recorded" on February 2, 2007, based upon the doctrine of *lis pendens.* Alternatively, appellant argued, the deed of trust recorded on February 2, 2007 did not establish a lien against the property in favor of appellee because it contained material changes without the consent of Pro Quality, the borrower. Finally, appellant argued that, if the deed of trust recorded on February 2, 2007 was valid, that its effective date was not May 24, 2006 (the date of the original loan agreement).

On June 10, 2008, appellee filed an Opposition to appellant's Motion for Summary Judgment, arguing that the deed of trust recorded on November 22, 2006 was valid against appellant because the failure to set forth the description constituted a "technical defect." Appellee further argued that the effective date of the deed of trust is based upon the date of delivery and not the date of recordation and the deed of trust reflected May 24, 2006, as the date of delivery, six months before the filing of appellant's petition for a mechanics' lien. Appellee asserted that the doctrine of *lis pendens* did not apply because the mechanics' lien commenced after equitable title passed to appellee. Finally, appellant argued that the mechanics' lien did not attach to the property until after the deed of trust was recorded in the land records. Appellant then filed a Cross–Motion for Summary Judgment. Appellant filed a Reply and

a Response to appellee's Cross–Motion for Summary Judgment.

On October 8, 2008, a hearing was held in the circuit court on the parties' cross-motions for summary judgment during which the parties argued their positions as stated in their motions. On November 26, 2008, the trial court entered a Memorandum Opinion and Order, denying appellant's motion for summary judgment, granting appellee's cross-motion for summary judgment and declaring that appellee's secured interest in the property located at 15410 Jamies Way, Accokeek, Prince George's County, Maryland had priority over appellant's secured interest in the property.

In its Memorandum Opinion, the trial court explained that appellee's deed of trust, originally recorded on November 22, 2006, was insufficient, as a matter of law, to create a secured interest in the property because it lacked a description of the property, as required by Md.Code (2003 Rep. Vol., 2007 Supp.), Real Property (R.P.) § 4–101(a)(1). The trial court further ruled that the doctrine of *lis pendens* did not apply because, "when an interest in property was acquired through a mortgage obtained prior to the commencement of litigation, the property interest is not subject to the operation of the doctrine of *lis pendens.*" The trial court noted that the mechanics' lien was not granted until March 5, 2007 and that, "when a mortgage is executed, but not recorded, before a creditor's suit is initiated, the subsequently recorded mortgage is effective against the creditor as of the date of the mortgage."

The trial court rejected appellant's argument that the deed of trust, recorded on February 2, 2007, containing a legal description, was invalid because it contained material alterations not consented to by Pro Quality. The court stated: "[T]he law protects the aggrieved party to the contract; it does not state that third parties, such as [appellant], are protected by this material alteration rule." Therefore, the trial court determined that the recordation of the deed of trust that occurred on February 2, 2007 would decide the priority

between the parties. Because the trial court determined that the doctrine of *lis pendens* did not apply and because the trial court rejected appellant's contention that the recordation on February 2, 2007 was invalid, it ruled that appellee's deed of trust, recorded on February 2, 2007, took priority over appellant's mechanics' lien, which had been granted on March 5, 2007.

On December 11, 2008, appellant noted a timely appeal to this Court. Additional facts shall be supplied *infra* as warranted.

## STANDARD OF REVIEW

Md. Rule 2–501(f) permits a trial court to grant summary judgment in favor of a moving party when there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. "When reviewing the grant or denial of a motion for summary judgment we must determine whether a material factual issue exists, and all inferences are resolved against the moving party." *Miller v. Bay City Prop. Owners Ass'n*, 393 Md. 620, 631, 903 A.2d 938 (2006) (citing *King v. Bankerd*, 303 Md. 98, 110–11, 492 A.2d 608 (1985)). The parties below agreed upon the facts, but each, in turn, argued that it was entitled to judgment as a matter of law. The Court of Appeals has stated that " '[the] standard of review of [a] [ ] declaratory judgment entered as the result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law.' " *Olde Severna Park Improvement Ass'n v. Gunby*, 402 Md. 317, 329, 936 A.2d 365 (2007) (quoting *South Easton Neighborhood Ass'n v. Town of Easton*, 387 Md. 468, 487, 876 A.2d 58 (2005)). Thus, we shall review the trial court's ruling *de novo*. *Am. Powerlifting Ass'n v. Cotillo*, 401 Md. 658, 667, 934 A.2d 27 (2007).

> On appeal from the entry of summary judgment, we review " 'only the grounds upon which the trial court relied in granting summary judgment.' " *Property & Casualty Ins. Guar. Corp.[ v. Yanni]*, 397 Md. 474, 480–81[, 919 A.2d 1] (2007) (citations omitted); *Lovelace v. Anderson*, 366 Md.

690, 695[, 785 A.2d 726] (2001); *Garval v. City of Rockville*, 177 Md.App. 721, 728[, 938 A.2d 51] (2007). However, " ' "if the alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment, summary judgment may be granted for a reason not relied on by the trial court." ' " *Ragin v. Porter Hayden Co.*, 133 Md.App. 116, 134[, 754 A.2d 503] (2000) (citations omitted). "When a motion is based solely upon 'a pure issue of law that could not properly be submitted to a trier of fact,' then 'we will affirm on an alternative ground.' " *Id.* (quoting *Davis v. Goodman*, 117 Md.App. 378, 395 n. 3[, 700 A.2d 798] (1997)).

*Washington Mutual Bank v. Homan*, 186 Md.App. 372, 388, 974 A.2d 376 (2009).

## LEGAL ANALYSIS

### I

Appellant challenges the trial court's grant of summary judgment in favor of appellee and advances four arguments in support of this position: (1) that the trial court correctly ruled that the deed of trust, recorded on November 22, 2006, was insufficient to create a security interest for appellee in the property,[2] (2) that appellant's mechanics' lien "relates back" to

---

2.  Appellee responds, requesting this Court to reverse the trial court's ruling on this ground, citing *Offutt v. Montgomery County Bd. Of Educ.*, 285 Md. 557, 564 n. 4, 404 A.2d 281 (1979). In *Offutt*, the Court of Appeals noted that only a party aggrieved by the judgment of a trial court may challenge that judgment on appeal and that a party may not appeal, or take a cross-appeal, from a judgment "wholly in his favor." *Id.* The Court further explained:

    Where a party has an issue resolved adversely in the trial court, but like the [defendant] here receives a wholly favorable judgment on another ground, that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial. This is merely an aspect of the principle that an appellate court may affirm a trial court's decision on any ground adequately shown by the record.

    *Id.* (citing *St. Comm'n On Human Rel. v. Amecom Div.*, 278 Md. 120, 123 n. 2, 360 A.2d 1 (1976); *Capron v. Mandel*, 250 Md. 255, 259, 241

the date that the petition for a mechanics' lien was filed under the doctrine of *lis pendens* and has priority over appellee's "re-recorded" deed of trust, (3) that appellee did not acquire a valid lien against the property as a result of the altered deed of trust recorded on February 2, 2007 and (4) that appellee did not acquire an equitable lien against the property that had priority over appellant's mechanics' lien.

Because appellant's mechanics' lien was granted last in the sequence of events, on March 5, 2007, we shall first address appellant's argument regarding the doctrine of *lis pendens* to determine when appellant's lien attached before addressing the remaining issues of priority. In addressing this argument, we shall consider his remaining claims, as they are intertwined, as we shall demonstrate *infra*.

## A

Appellant filed a petition for a mechanics' lien in the circuit court on December 13, 2006; thus, although it was not granted until March 5, 2007, appellant contends that it takes priority over appellee's deed of trust, recorded on February 2, 2007, under the doctrine of *lis pendens*. *Lis pendens* is a well-established legal doctrine in Maryland. "It literally means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment." *DeShields v. Broadwater*, 338 Md. 422, 433, 659 A.2d 300 (1995). The Court of Appeals has explained that, "[u]nder the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation." *Id.*

The trial court ruled that the doctrine of *lis pendens* did not apply to the case *sub judice* because, "where an interest in property was acquired through a mortgage obtained prior to the commencement of litigation, the property interest is not

A.2d 892 (1968)). Thus, we shall review the parties' arguments on this ground of the trial court's ruling, *infra*.

subject to the operation of the doctrine...." The trial court relied on *Angelos v. Maryland Cas. Co.,* 38 Md.App. 265, 268, 380 A.2d 646 (1977) and *Residential Indust. Loan Co. v. Weinberg,* 279 Md. 483, 369 A.2d 563 (1977) in reaching its determination. Appellant contends that *Angelos* and *Weinberg* are inapposite. Appellee, not surprisingly, contends that the trial court properly relied on these cases in granting summary judgment in its favor.

In *Angelos,* the Court of Appeals reviewed a circuit court's determination of lien priority between the holder of a third mortgage and a judgment creditor. 38 Md.App. at 266, 380 A.2d 646. The homeowners executed a third mortgage, in favor of the third mortgagee, on their residence and a week later Maryland Casualty Company sued the homeowners, prior to the recordation of the third mortgage. *Id.* at 267, 380 A.2d 646. The trial court gave the judgment creditor priority over the third mortgagee based upon the doctrine of *lis pendens* because, although it had not yet acquired a judgment against the homeowners prior to the recordation of the third mortgage, it initiated litigation before the deed of trust was recorded. *Id.* The Court of Appeals reversed the circuit court, opining:

> We need not decide the unlikely prospect that the petition for an *ex parte* injunction to restrain the sale of land preserving an asset for a general creditor was sufficient to comply with the *Feigley[ v. Feigley,* 7 Md. 537 (1855) ] requisite that the proceeding relate directly to the property in question, since Angelos' property interest was acquired through a mortgage obtained prior to the commencement of the litigation upon which Maryland Casualty's lis pendens claim rests, and therefore is not subject to the operation of the doctrine.

> Md.Code, Real Prop. Art. § 1–101(c) defines the term "deed" as used in the Real Property Article to include, among other things, "mortgage". Subsequent § 3–201 states that:

> > "Every deed [or mortgage], when recorded, *takes effect from its effective date as against* the grantor, ... and

*every creditor of the grantor with or without notice."*
(emphasis in original).

> Although the mortgage was recorded after the suits were
> filed, under the statute it took effect against Maryland
> Casualty as of the date of mortgage, which was (assuming
> the title report to the correct) nearly a month before the
> suits were filed.

*Id.* at 268–69, 380 A.2d 646 (footnote omitted).

In *Residential Indus. Loan Co., Inc. v. Weinberg*, 279 Md.
at 488, 369 A.2d 563, the Court of Appeals similarly deter-
mined that reliance on the doctrine of *lis pendens* did not
apply and was misplaced by a mechanics' lien holder who
sought to acquire priority over other mortgages. In *Wein-
berg*, a contractor filed a petition to acquire a mechanics' lien
after the execution of a second deed of trust but prior to the
recording of the second deed of trust. *Id.* at 485, 369 A.2d
563. Subsequently, the trial court granted the contractor's
mechanics' lien. *Id.* at 486, 369 A.2d 563. The Court of
Appeals, relying on *Barry Properties v. Fick Bros.*, 277 Md.
15, 353 A.2d 222 (1976), held that no mechanics' lien attaches
until "the claimant has prevailed in an 'appropriate proceed-
ing' to establish the lien's existence." *Id.* at 488, 369 A.2d 563.
The Court further stated, ". . . we are also of the view that the
doctrine of *lis pendens* cannot aid [the contractor] here, since
it has been determined that as of the time of the recording of
the two deeds of trust, [the contractor] had no interest in [ ]
the property." *Id.*

Appellant contends that *Angelos, supra*, does not apply to
mechanics' lien cases, but fails to present to this Court any
authority to indicate that mechanics' liens would be treated
any differently under like circumstances. Furthermore, al-
though *Weinberg* addresses the operation of *lis pendens* in the
context of determining priority between a deed of trust and a
mechanics' lien, appellant contends that "the issue involved
lien filings prior to the *Barry Properties* decision, not *lis
pendens* " and that R.P. § 9–102(e) had not yet been enacted.

Thus, appellant argues that *Weinberg* should not prevent its mechanics' lien from acquiring first priority status.

Appellee contends that, under *Himmighoefer v. Medallion Indus., Inc.*, 302 Md. 270, 487 A.2d 282 (1985), it is clear that the doctrine of *lis pendens* does not apply to the case *sub judice.* We agree. In *Himmighoefer,* a builder contracted to sell two lots to two different purchasers. The first contract of sale was executed on November 17 and the second contract of sale on the other plot was executed on November 24. Neither contract was recorded in the land records. *Id.* at 271, 487 A.2d 282. On December 23, the contractor filed a petition to establish a mechanics' lien against each lot. *Id.* The liens were granted on February 2, after the lots were conveyed to the purchasers. The trial court held that the purchasers had "constructive notice" of the liens when the contractor filed the petition for the liens and the liens were stayed for thirty days. The purchasers appealed and the Court of Appeals granted a *writ of certiorari. Id.* at 273, 487 A.2d 282.

Initially, the Court observed: "We suspect that a part of the problem here arises from confusion in the minds of some between the law as it existed prior to our decision in *Barry Properties v. Fick Bros.,* ... and the law as it exists today." *Id.* at 272–73, 487 A.2d 282. The Court explained that, in *Barry Properties,* it held a portion of the Real Property Article pertaining to mechanics liens unconstitutional because it was "incompatible with the due process clauses of Article 23 and the Fourteenth Amendment." *Id.* at 274, 487 A.2d 282 (quoting *Barry Properties,* 277 Md. at 33, 353 A.2d 222). Under the "old law," the Court explained, a mechanics' lien would take priority over any mortgage subsequent to "the commencement of the building." *Id.* Thus, the Court, in *Barry Properties,* " 'excis[ed] the portion of the statute which purport[ed] to create a lien from the time work is performed ...'" so that there could "be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding.'" *Id.*

Since the Court's decision in *Barry Properties*, the legislature enacted the "new law" pertaining to mechanics' liens in R.P. § 9–101 *et seq.*

> Section 9–102(d), contains an exemption, relied upon by the [purchasers] here, to the effect that "a building or the land on which the building is erected may not be subjected to a lien under th[at] subtitle if, prior to the establishment of a lien in accordance with th[at] subtitle, legal title has been granted to a *bona fide* purchaser for value." [The contractor] relies upon § 9–102(e), which says, "The filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle."

*Id.* at 276, 353 A.2d 222.

In holding that the purchasers took the property free from the mechanics' lien, the Court explained that, under § 9–106, "no lien exists until passage of a final order." *Id.* at 277, 353 A.2d 222. In *Himmighoefer*, the purchasers "acquired equitable title once they contracted with [the builder] to buy the lots in question." *Id.* at 278, 487 A.2d 282. The Court observed, *id.:*

> [The contractor] is of the view that the filing of its petition to establish a mechanics' lien gave constructive notice to the [purchasers] and thus somehow established a claim against their lots. At best, this action could place [the contractor] in no better position than that which would have prevailed had it obtained a judgment against the seller between the time of the contracts of sale and the passing of the deeds. Unlike the situation which prevailed under the "old" law, there is no mechanics' lien under the "new" law until the passage of a court order establishing that lien. The lien exists purely by virtue of statute.

In ruling in favor of the purchasers, the Court ultimately held, *id.* at 281, 487 A.2d 282:

> [The purchasers] were vested with equitable title prior to the filing of the petition for a mechanics' lien. That petition could create no lien because a lien only comes into being

upon court order. We are not obliged to consider whether the [the purchasers] were *bona fide* purchasers within the meaning of § 9–102(d) nor are we obliged to consider the effect of § 9–102(e) pertaining to notice because equitable title vested in the [purchasers] prior to the docketing of the suit to establish the mechanics' liens. [The purchasers'] position as to the entry of a mechanics' lien is no worse than it would have been had a judgment been entered against the seller between the time of the execution of the contracts of sale and the passage of a deed. The fact that a mechanics' lien is a specific lien *in rem* and a judgment is a general lien makes no difference. The interest of the appellants in the land in question could not be reached by the mechanics' liens.

*Id.*

The contractor in *Himmighoefer* took the same position as appellant takes in the instant case, that under R.P. § 9–102(e), appellant had notice of appellant's possible lien. Appellee counters, similar to the purchaser in *Himmighoefer,* that it should be treated like a contract purchaser under the doctrine of equitable conversion, *i.e.,* that it had an equitable lien prior to the date that appellant filed its petition for a mechanics' lien.

Pursuant to the authorities cited *supra,* we must ascertain if and when appellee acquired an interest in the property in order to determine whether the doctrine of *lis pendens* and R.P. § 9–102(e) apply. The trial court ruled that *lis pendens* did not apply without considering whether appellee acquired an interest in the property as of the date of settlement and execution of the original deed of trust, May 24, 2006. Instead, the trial court focused on the parties' interest in the property as they were determined by the dates of recordation and concluded that appellee recorded its deed of trust with a description of the property on February 2, 2007 and "it is this recording that determine's the parties' interests." Thus, because appellant did not acquire its mechanics' lien until March 5, 2007, the trial court concluded that appellee's deed of trust took first priority status. However, it is not the act of

recording a deed of trust that establishes appellee's interest in the property. Therefore, we must examine the chain of events to determine how and when appellee acquired an interest in the property.

## B

■ Appellee contends that its mortgage was valid, in essence, from the date of execution and delivery; thus, it was thereafter valid against the mortgagor, Pro Quality and all of Pro Quality's creditors, including appellant, because appellant's petition for a mechanics' lien was not filed until several months after the date of the deed of trust. Appellant, however, contends that the absence of a description of the subject property invalidates the deed of trust executed on May 24, 2006 and that the defective deed of trust may not be cured by examining any additional documents. Appellant relies heavily on R.P. § 4–101(a)(1), which provides:

§ 4–101. **What deeds sufficient; seal or attestation not required.**

(a) *What deeds sufficient; leases.—*

(1) Any deed containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, if executed, acknowledged, and, where required, recorded.

Accordingly, appellant contends that, because appellee cannot prove that a description was ever appended to the deed of trust executed on May 24, 2006, the deed of trust was invalid and appellee had no interest in the property as of that date.

The parties do not dispute that Pro Quality, through Lagana, intended to execute a deed of trust in favor of appellee, in exchange for a loan in the amount of $811,000 when it signed the Letter of Commitment and executed the deed of trust on May 24, 2006. Further, the parties agree, and the trial court found, that no description of the property was included with the original deed of trust that was sent to the circuit court for recording. The parties were unable to demonstrate before the

trial court whether a description of the property was ever present and attached to the deed of trust on May 24, 2006 during settlement.[3] The trial court did not make an express finding in this regard because it limited its ruling to whether the deed, recorded on November 22, 2006, created a valid security interest in favor of appellee. It ruled that the deed recorded on November 22, 2006 was insufficient to create a security interest. We disagree with the trial court's ruling in this regard because the recordation does not determine whether a security interest exists, as we shall explain, *infra.*

Construing the facts in a light most favorable to appellant on this point, we shall assume that there was no description appended as Exhibit A [4] for our purposes and address whether the deed of trust was valid, notwithstanding the absence of the property description. We hold that the absence of the description, under the specific circumstances in the case *sub judice,* did not invalidate appellee's interest as a mortgagee because an equitable mortgage was established on May 24, 2006.

■ The Court of Appeals has held that an agreement purporting to be a mortgage may be treated as such under the doctrine of equitable mortgages.

> It is well settled in this State, since *Dyson v. Simmons,* 48 Md. 207 (1878), that generally where an instrument intended to operate as a mortgage fails as a legal mortgage because of some defect or infirmity in its execution, an equitable mortgage may be recognized, with priority over

---

**3.** The deposition testimony of Terri Jarboe–Farr, employee of Buyer's Title, established that, although it was their policy to include an attachment, she could not recall specifically whether in this case the exhibit containing the property description was attached. The mortgagee, Pro Quality, and its president, Lagana, were not deposed. It is unclear from the record why Lagana was not deposed or whether he could have testified to the presence of the description on the date of settlement.

**4.** The first deed of trust sent for recording referred to "Exhibit A" and "Exhibit A" was attached, but there is a blank space where the description of the property should have been.

judgments subsequently obtained. *See also Jackson v. County Trust Co.*, 176 Md. 505[, 6 A.2d 380] (1939); *Western Bank v. Union Bank*, 91 Md. 613[, 46 A. 960] (1900); *cf. Berman v. Berman*, 193 Md. 614[, 69 A.2d 271] (1949). The theory underlying the equitable mortgage doctrine is that an instrument which is intended to charge certain lands, even though defectively executed, is nevertheless considered to be evidence of an agreement to convey, and a court of equity should enforce the obligation despite the technical defects in the instrument.

*Lubin v. Klein*, 232 Md. 369, 371, 193 A.2d 46 (1963). *See also Pence v. Norwest Bank Minnesota*, 363 Md. 267, 280, 768 A.2d 639 (2001).

■ Although we are aware of no previous decision wherein this Court or the Court of Appeals has held that a failure to include a description of the subject property constitutes a "defect or infirmity" that would bring the instrument within the purview of the doctrine of equitable mortgages, we observe that, in the instant case, it is the intent of the parties that controls. The Court of Appeals has previously expressed that a defective instrument should be treated as an equitable mortgage when the intent of the parties is obvious.

An equitable mortgage results from different forms of transactions in which there *is present an intent of the parties* to make a mortgage, to which intent, for some reason, legal expression is not given in the form of an effective mortgage; but *in all such cases the intent to create a mortgage is the essential feature of the transaction.* Thus, an equitable mortgage has been held to result from a defectively executed legal mortgage; or from an agreement to execute a mortgage, if the agreement be certain in terms and clearly proven; or from a deed absolute in form shown to have been in fact intended to operate as a mortgage.

*Western Nat'l Bank v. Nat'l Union Bank*, 91 Md. 613, 621, 46 A. 960 (1900) (internal citations omitted) (emphasis added).

The deed of trust, executed on May 24, 2006, contains the names of the grantor and grantee, the interest or estate

intended to be granted, and it was executed and acknowledged on that date. R.P. § 4–101(a). Thus, it contains all of the requisite attributes of a valid deed of trust, with the exception of a description of the property. The parties clearly intended Exhibit A to provide the legal description of the property. The deed of trust defines "land" as "all that lot of ground situated in Prince George's County, Maryland, as more particularly described on Exhibit 'A' attached to this Deed of Trust and made part thereof." Although the attachment failed to include a description, appellee aptly points out that the deed of trust also states in the "Recitals" section

> In addition to the Promissory Note and this Deed of Trust, the Loan is further evidenced by the other Loan Documents,[5] as such Loan Documents may be amended, modified, replaced or amended and restated in their entirety in the future, the Beneficiary hereby expressly reserving unto itself the right to do so.

Appellee asserts that one such "loan document," the May 24, 2006 commitment letter, evidences the fact that the parties intended Pro Quality's property to be the subject of the deed of trust. Across the top of the commitment letter, the subject line states: "$811,000 Acquisition and Development Loan for 15410 Jamies Way, Accokeek, MD 20607."[6] Moreover, in

---

**5.** "Loan Documents" are defined by the agreement as follows:

Loan Documents shall mean the Promissory Note, the Deed of Trust and such other documents and writings executed and delivered by the Grantor and other signatory parties to the Beneficiary, evidencing, securing or otherwise documenting the terms and conditions of the Loan, as the Promissory Note, the Deed of Trust, and such other documents may be amended, modified, replaced or amended and restated in their entirety in the future.

**6.** Appellant contends, without citation to authority, that a street address is an insufficient description. In *McDonough v. Roland Park Co.*, 189 Md. 659, 57 A.2d 279 (1948), the Court of Appeals affirmed the judgment of a trial court granting a petitioner relief in an action to quiet title to remove a cloud on the title to his land. *Id.* at 666, 57 A.2d 279. In the chain of title to petitioner's property, there was a reservation for a graveyard described as "fifty feet square to be used only as a burial place by the said Jacob Mason and his heirs. . . ." *Id.* at 661, 57 A.2d 279. Based upon the description, it was impossible to locate the

Article I of the commitment letter, "land" is defined as "15410 Jamies Way Accokeek, Maryland 20607 which is to have one single house, approximately 4,303 square feet built upon it, situated and lying in Prince George's County, Maryland." The commitment letter was signed by Lance Johnson, Assistant Vice President of First Mariner Bank and it was "accepted" and signed by Barry Lagana as President of Pro Quality.[7]

Appellant contends that the absence of a property description in Exhibit A of the deed of trust that was executed on May 24, 2006, is fatal to the validity of the instrument and that we may not look to the other loan documents as evidence of the parties' intent. In support of this contention, appellant cites *Severson v. Severson,* 459 N.W.2d 473 (Iowa 1990). In *Severson,* the Iowa Supreme Court was faced with the question of whether property described in an exhibit ("Exhibit A"), which was attached to an irrevocable trust but not recorded, conveyed the property through the trust. *Id.* The court held that, because the grantor never authorized the filing of the Exhibit, never knew it existed and there was "overwhelming evidence that [the grantor] did not intend to place his real estate in the irrevocable trust," the instrument was ineffective to convey the real property. *Id.* at 478. To the extent that *Severson* is even arguably analogous to the case *sub judice,* we discern a significant distinction. Based on all of the evidence before the trial court, there is no question that Pro Quality intended to convey the property *via* the deed of trust and it intended a description of that property to be included as Exhibit A.

---

alleged graveyard on the property. The Court explained, in affirming the decree removing the cloud created by the reservation, that "the lack of sufficient description in the reservation to identify the intended graveyard with reasonable certainty ..." made the reservation "wholly inoperative." *Id.* at 666, 57 A.2d 279. There has been no assertion in the case *sub judice* that the address contained in the commitment letter suffers from the same deficiency.

**7.** Appellant contends that the commitment letter only obligated Barry Lagana to grant a deed of trust in favor of appellee and not Pro Quality. This contention is patently spurious, as Barry Lagana clearly signed in his capacity as President of Pro Quality.

In holding that appellee had an equitable mortgage as of the date of the mortgage or deed of trust, May 24, 2006, we further hold that appellee took its interest prior to, and free and clear of, appellant's December 13, 2006 petition for a mechanics' lien. This, as appellee points out, has long been the law of this State.

> The principle is now so well settled, that it would seem to be beyond all question and controversy, that if a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a Court of equity.
>
> . . .
>
> As against the mortgagor himself this proposition was never regarded as questionable, but as against judgment creditors of the mortgagor, obtaining their judgments subsequent to the date of the mortgage, there was formerly some dispute. The question, however, both in England and in this State, has been long since settled; and the cases, without an exception, so far as we are informed, hold that a judgment, being but a general lien, must be subordinated to the superior equity of a prior specific lien, created by a defective mortgage or conveyance.

*Dyson v. Simmons,* 48 Md. 207, 214–15 (1878) (internal citations omitted).

Although appellant urges that, since the enactment of the revised mechanics' lien statute, a mechanics' lien should be treated differently than other judgments, we find no support for that contention. Implicit in appellant's argument is that its mechanics' lien should take priority because, in essence, it lacked notice of appellee's mortgage because it was not properly recorded.

We recently addressed in *Washington Mutual Bank v. Homan,* 186 Md.App. 372, 974 A.2d 376 (2009), the protections

to which a *bona fide* lender for value is entitled under Maryland Law.[8]  In so doing, we had occasion to reflect upon the purpose of the notice requirements in Maryland.  Addressing the effective date of a deed of trust and the intersection with the notice requirements under the Real Property Article, we opined:

> We are aware of no authority supporting the proposition that a deed holder's "notice," for purposes of resolving a dispute between two competing interests to the same property, is to be assessed at the time of the recording of the deed.  Rather, the relevant inquiry is whether the *bona fide* purchaser or lender has notice of an existing interest in the property when his or her own interest is acquired.
>
> . . . .
>
> Indeed, the type of notice upon which Maryland's recording statute places emphasis, with respect to establishing the priority of competing deeds to real property, is not the notice held by the deed holder at the time of recordation, but rather, the deed holder's notice as to competing interests when the deed is delivered.  Section 3–201 of the Real Property Article sets forth the rule for determining the "effective date" of a deed:
>
>> *The effective date of a deed is the date of delivery,* and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later.  Every deed, when recorded, takes effect from its effective date as against the grantor, his

---

**8.** In *Washington Mutual,* the appellant was a mortgagee who acquired a deed of trust on a property that was the subject of a previously executed contract for sale to another party.  The mortgagee, without notice of this contract of sale (and the conveyance of equitable title), failed to record its deed of trust promptly.  Between the date of the loan and the date of recordation, the parties to the previous contract of sale (the purchasers), filed suit to, among other things, enforce the contract of sale.  Among the myriad of arguments raised by the purchasers, they challenged the validity of the mortgagee's deed of trust based on *lis pendens* because they had filed suit prior to the recordation of the deed of trust.  Thus, we had occasion to address the rights of a mortgagee as a *bona fide* lender for value and the interplay with the doctrine of *lis pendens*.  186 Md.App. at 372–99, 974 A.2d 376.

personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

(Emphasis added). Section 3–203 further provides:

*Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:*

(1) Accepted delivery of the deed or other instrument:

  (i) In good faith;

  (ii) *Without constructive notice* under § 3–202; and

  (iii) For a good and valuable consideration; and

(2) Recorded the deed first.

(Emphasis added).

Under Maryland's recording statute, [the mortgagee], in order to establish the priority of its deed of trust over any prior deeds to the Property, was required to have accepted delivery of the deed of trust in good faith, without constructive notice and for good and valuable consideration. Once appellant, having acquired legal title in that manner, recorded the deed of trust, the deed of trust took effect, as of the date it was delivered, as against any other deed granted and recorded after that date.

*Id.* at 399–400, 974 A.2d 376. (footnotes omitted).

■ Our holding today is in line with *Washington Mutual, Angelos, Weinberg* and *Himmighoefer, supra.* The overwhelming weight of authority is that once a *bona fide* purchaser or lender for value acquires title by way of execution of contract for sale or valid mortgage, the purchaser or mortgagee takes title free and clear of any subsequent lien.[9] In the

---

**9.** Appellant cites *Nat'l Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606, 616, 650 A.2d 246 (1994), *IA Construction Corp. v. Carney*, 104 Md.App. 378, 656 A.2d 369 (1995) and *Wolf Organization, Inc. v. Oles*, 119 Md.App. 357, 705 A.2d 40 (1998) for the general proposition that a purchaser of a property takes its interest subject to a mechanics' lien when the petition for the mechanics' lien is filed *prior* to the passage of

case *sub judice*, it is beyond cavil that appellee acquired its interest as a mortgagee of the property well before the filing of the petition for a mechanics' lien; thus, it did not take its interest subject to appellant's mechanics' lien and appellant's mechanics' lien did not acquire priority over appellee's interest.

## II

Because we hold that appellee acquired title to the property prior to the petition for appellant's mechanics' lien, we need not address whether appellee's deed of trust that was "re-recorded" on February 2, 2007 with a description appended as "Exhibit A," created a valid deed of trust at that point. We briefly note, however, that to the extent that the February 2, 2007 deed of trust changed any of the terms of the deed of trust executed on May 24, 2006, it only further clarified what was missing from the deed of trust earlier.

Finally, to the extent that the trial court granted summary judgment in favor of appellee as a result of its "re-recordation" of the deed of trust on February 2, 2007 because it took priority over the mechanic's lien in terms of time, we reverse that ruling because, as set forth *supra*, appellee's interest in the property was not established through recordation prior to the mechanic's lien. Moreover, as we recently made indelibly clear in *Chicago Title Ins. Co. v. Mary B.*, 190 Md.App. 305, 316, 988 A.2d 1044 (2010), once recorded, under R.P. § 3–201, a deed is effective as of the date of execution, notwithstanding the chronology of recordation. Thus, we held in *Chicago Title* that a mortgage executed prior to a judgment, but not recorded until after the attachment of the judgment, takes priority as of the date of execution of the deed of trust. *Id.* at 320–21, 988 A.2d 1044. Under *Chicago Title*, appellee's deed of trust would take priority no matter

---

legal or equitable title. We fail to see how this proposition bolsters appellant's position.

when in the chronology it was recorded because it would be effective as of the date of execution.

In light of the foregoing analysis, we decline to address the remainder of appellant's contentions.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**